[PHILADELPHIA, FEBRUARY 9, 1835.]

SPICER *qui tam against* REES.

CERTIORARI.

*A certiorari does not lie to the Supreme Court from the decision of the Mayor of the city of Philadelphia, in an action brought to recover the penalty for a breach of the ordinance passed March 28th, 1822, relating to stalls in the market.*

Certiorari to *John Swift*, Esq. Mayor of the city of Philadelphia.

This was an action of debt, to recover the penalty of five dollars, for an alleged violation of the first section of an ordinance of the city, passed the 28th of March, 1822, and entitled "a further supplement to an ordinance for the regulation of the market held in High street, and for other purposes."

The said section is as follows:

"From and after the passing of this ordinance, no stall or stand in the western moieties of either of the market houses in High street, west of Fourth. street, shall be let to any person exercising the trade or occupation of butcher or victualler, for the purpose of exposing for sale any beef. And if any person as aforesaid, occupying a stall or stand as aforesaid, shall vend or expose for sale, in any or either of the western moieties aforesaid, any beef, he, she, or they shall forthwith forfeit all right to the stall or stand so occupied, and shall also forfeit and pay the sum of five dollars, to be recovered with costs. before the mayor, recorder, or any alderman; one half thereof for the use of the person sueing for the same, and the other half for the use of the city."

Upon the hearing the following facts were given in evidence.

That the defendant *Jacob Rees*, was the servant of *John Serrill*, of the county of Delaware in this commonwealth, and as such, did, before the issuing of the process in this case, use and occupy a stand,

(Spicer *v.* Rees.)

stall or place within the western moiety of the market house in High street, between Delaware Seventh and Eighth streets, and there expose for sale and vend, beef: That the said *John Serrill* was the owner of the beef so' exposed for sale and sold, and was the legal renter of the stand, stall or place upon which it was so exposed for sale and sold.

That the said *John Serrill,* was, at the time aforesaid, and for a long time before, and still is, an extensive *farmer and grazier,* residing in the county of Delaware aforesaid : That he is the occupier of three hundred and four acres of marsh or meadow land in the counties of Philadelphia and Delaware, and of one hundred and six acres of upland in said Delaware county ; and, besides beef, sends to market and exposes for sale upon the stand, stall or place aforesaid, butter, poultry, vegetables and other articles, the produce of his farm.

That the beef exposed for sale and sold as aforesaid, was fattened upon the farm of the said *John Serrill,* in the usual course of grazing in the district of country where he resides; the cattle having been purchased, in a lean state, from eastern and western drovers, in the early part of the season, and pastured on the farm of the said *John Serrill,* until they were fattened, when they were slaughtered, and exposed for sale, upon the stand, stall or place aforesaid, by the said defendant, as the servant of the said' *John Serrill.*

Upon these facts the mayor rendered judgment for the plaintiff.

### Exceptions.

1. The mayor of the city of Philadelphia had no authority to hear and determine the complaint.

2. The said mayor erred in deciding that the defendant, was a person exercising the trade or occupation of butcher or victualler within the meaning of the ordinance under which the penalty was claimed, and the act of assembly of the 19th of March, 1810, authorizing the city to extend the market house in High street.

3. The said mayor erred in deciding that the beef exposed for sale and sold by the defendant, was not the produce of the farm of *John Serrill* within the meaning of the said act of assembly and the ordinances founded thereon.

4. Upon the evidence before the mayor, judgment should have been rendered for the defendant.

The act of assembly referred to in the second and third exceptions.—5 *Smith's Laws,* 118, is as follows :

" Sect. I. 'It shall and may be lawful for the corporation of the city of Philadelphia, when, and as often as they shall think proper, to extend the market-house in High street, or elsewhere in the said city, to build a market-house or houses, to let or demise the one half of the stalls which they may erect, to such persons from the country, as send or carry the produce of their farms to the said

market, and to no others, and to let the other half of the stalls so erected at their own discretion to such person or persons, butchers or victuallers, as to them it may seem proper; any law, usage or custom to the contrary notwithstanding.

" Sect. II. Whenever the market-houses in High street shall be extended, it shall not be lawful for any victualler to sell any beef in the western moiety of any market house or shambles that may be erected at any time hereafter in High street; but the western moiety shall be let to such persons from the country, who send or carry the produce of their farms to market, and to no others, and the one half of the stalls that may be erected elsewhere, shall also be let to such persons from the country, who send or carry the produce of their farms to market, and to no others; provided, that the annual rent so to be charged and received, shall not exceed twenty dollars per stall."

*Olmsted, J. C. Biddle,* and *W. M. Meredith,* for the plaintiff.

*Wm. T. Smith* and *Chauncey,* for the defendant.

Mr. *Smith* having commenced his argument in support of the exceptions, a doubt was suggested by the court, whether their right to issue a *certiorari* to the mayor was not taken away, by the 24th section of the act of March 20, 1810. The argument upon the exceptions was then suspended, and the counsel was requested by the court, to argue the question of jurisdiction.

The counsel on both sides, agreeing as to the right of the court to issue the *certiorari* in this case, the question was argued by *Olmsted* and *Smith,* who contended,—

1. That the action before the mayor was a strictly popular one, not intended to compensate the plaintiff for any injury suffered by him, but to punish the defendant, and therefore not a *civil action* within the act of March 20, 1810, taking away the writ of *certiorari.* *Buckwalter v. the United States,* 11 Serg. & Rawle, 193. *Zeigler v. Gram,* 13 Serg. & Rawle, 102. *Davy v. Baker,* 4 Burr. 2471. A writ of *certiorari* may issue from this court to remove the proceedings of a justice under the act of 1705, relative to swine running at large. *Commonwealth v. Fourteen Hogs,* 10 Serg. & Rawle, 393.

2. The right of this court to issue a *certiorari* to the mayor, even in civil actions, has never been taken away.

The act of March 20, 1810, refers only to *justices of the peace.* Justices of the peace, are a class of officers, whose appointment is provided for in section 10, of art. 5, of the constitution. A mayor is a magistrate of an entirely distinct class, deriving his appointment from a different source, and exercising different functions.

If the mayor is a justice of the peace, he is entitled to the civil jurisdiction conferred upon the latter officer, by the act of March 20, 1810, which has never been pretended. If he is included in

(Spicer *v.* Rees.)

the term, "justice of the peace," in the 24th section of the act, he must be included in the same term in the other sections.

It can make no difference that the mayor has, to some extent, the powers of a justice—his office of mayor is not merged. The judges of the Common Pleas are, by the constitution, justices of the peace. Does the act of 1810, therefore take away the *certiorari* to them?

The act of 1810 takes away from parties to civil actions before a justice of the peace, the protection of this court, and therefore ought to be, and always has been, strictly construed. In *Lenox* v. *M'Call,* 3 *Serg. & Rawle,* 101, it was held that a *certiorari* lay to the proceedings of two aldermen under the act of April 6, 1802. A similar construction was applied in *Clark* v. *Yeat,* 4 *Binn.* 185.

If this court cannot issue a *certiorari* to the mayor, parties injured by his judgments will be without remedy.

By section 8, of art. 5, of the constitution, the judges of the courts of Common Pleas have power to issue writs of *certiorari* to justices of the peace. They have no authority under the constitution, or under any act of assembly, to issue a writ of *certiorari* to the mayor.

This court has ample power. Judiciary act of May 22, 1722. *Commonwealth* v. *Beaumont,* 4 *Rawle,* 366.

The opinion of the court was delivered by

GIBSON, C. J.—By the twenty-fourth section of the act of 1810, it is declared that "no writ of *certiorari* by or out of the Supreme Court to any justice of the peace in any *civil* suit or action, shall be available to remove the proceedings had before such justice." Is the present then a civil suit? Whatever may have been the notions of the courts in the earlier times, the point was solemnly considered and decided in *Atcheson* v. *Everitt, Cowp.* 382, where it was determined that actions strictly popular and not compensatory, are not criminal prosecutions but civil suits. The question was, whether in an action of debt on the 2 G. 2, c. 24, section 7, which gives a penalty for bribery to any one who will sue for it, the testimony of a Quaker might be received on his solemn affirmation pursuant to the 8 and 9 W. 3, which authorises such testimony, except in 'any criminal cause,' and the 22 G. 2 c. 30, which prohibits it in 'any criminal case;' and it was adjudged competent, though the action was not only popular but productive of personal disabilities. In delivering the opinion of the court, Lord MANSFIELD remarked that penal actions had never been ranked with criminal prosecutions by elementary writers; and that such a proceeding was as much a civil action as if it were for money had and received. In this he is certainly corroborated by *Wynn* v. *Middleton,* 1 *Wils.* 125, in which it was held that an action for double damages as a penalty for a false return, given by the 7 and 8 W .3, c. 7, to the party aggrieved, is not a criminal prosecution but a civil action, and amendable, as such, by the 16 and 17 Car. 2, c. 8, though the 4 G. 2, c. 26, excepts

(Spicer *v.* Rees.)

criminal cases from the operation of the statutes of jeofails; and the judgment was affirmed in the Exchequer Chamber. It must be admitted however, that the damages beyond mere compensation, were given to the party injured; but Lord MANSFIELD recognised no distinction on that head. Such is the law as settled on principle and the latest authority in England. But as standing in opposition to it, is cited the decision in *Buckwalter v. The United States*, 11 *Serg. & Rawle* 193, in which it was said generally by Mr. Justice DUNCAN, delivering the opinion of the court, that an action of debt on a penal statute, is not within the compulsory arbitration act which is applicable in its terms but to civil suits. The action there, however, was brought by a sovereign for an infraction of the laws of the land, and not, as here, for the infraction of the bye-law of a corporation; and though it has been determined that the United States, when descending to the level of an ordinary suitor in a state court, divests herself of the prerogative of a sovereign, yet it may well be thought that her action for a breach of the criminal laws is not a civil suit within the intent and meaning of the arbitration act, which has in other instances been construed more restrictively than the letter would seem to require; as in *Jones v. Stratton*, 4 *Serg. & Rawle* 76, and *Deal v. Deal*, 7 *Serg. & Rawle* 201, where it seems to have been thought that account render, though indisputably a civil action, was not originally within its purview; and in *Roop v. Meek*, 6 *Serg. & Rawle*, 345, the same thing seems to have been thought of an action on a bail bond or a recognisance in a criminal prosecution, the court having a discretionary power to stay proceedings, or to remit or moderate the penalty. In *Buckwalter v. The United States*, policy required that the accused should not be suffered to baffle the prosecution by arbitrating the question of criminality with his prosecutor; and that was in truth the ground of the decision, though Mr. Justice DUNCAN, as was his custom, brought to the defence of his position every technical principle and authority that could be brought to bear upon the argument. He was perhaps inaccurate in saying that statutes of amendment do not extend to penal actions, except perhaps where the state is prosecutor. Here, however, the state is not a party, as the plaintiff prosecutes for himself and a corporation.

It is contended however, that though the action be a civil one, the writ of *certiorari* may well lie from this court to the mayor who is not a justice of the peace, and whose proceedings therefore are not within the prohibitory clause. But he is clothed with no other jurisdiction than that of an alderman who is virtually a justice, and whose proceedings can be dealt with by the courts of record only as such. The root of the matter is, that the mayor had no jurisdiction of the cause of action by the general law giving civil jurisdiction to justices and aldermen; and the legislative power of the corporation was incompetent to supply the deficiency, as was determined in *Barter v. The Commonwealth*, 3 *Penn. Rep.* 260.

(Spicer *v.* Rees.)

The judgment being void, there needs no reversal. However worthy of decision by the court in the last resort, it seems impossible to get at the question in the present shape. The end might perhaps be attained by an indictment in the Mayor's Court ; and though it may be inconvenient if not oppressive in practice to prosecute every breach of an ordinance in that way, an application to the legislature would doubtless produce an appropriate remedy saving to the accused his constitutional right to a trial by jury on appeal. We are however to administer the law as we find it ; and we feel ourselves not at liberty to disregard the injunction which forbids us to take jurisdiction of the question by *certiorari.*

Writ quashed.

HUSTON, J. was absent.