## Commonwealth *qui tam, ex rel.* Johnson *versus* Betts.

1. A certiorari from the Supreme court lies to remove a record of the Common Pleas after judgment in a certiorari to justice of the peace, in a prosecution for a penalty under the Road Laws.

2. Such prosecution is not a civil action within the meaning of Act of March 20th 1810, sect. 24.

3. The jurisdiction of the Supreme Court cannot be taken away except by express terms or necessary implication.

4. The 67th sect. of the Act of June 13th 1836 (Road Law), imposes a penalty on any one " who shall stop, fill up or injure any drain or ditch made by any supervisor for the purpose of draining water from any public road, or divert or change the course thereof;" a person who had " torn out, destroyed and filled up a drain * * * in the public road, * * * and so destroying and filling up said drain that the water could not cross said road," was liable to the penalty under this section.

5. The jurisdiction of the Supreme Court to issue writs of certiorari, in proceedings commencing before justices of the peace, examined and stated.

6. Frick *v.* Patton, 2 Rawle 20 ; Spicer *v.* Rees, 5 Id. 119, examined and criticised.

October 23d 1874.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1874, No. 50.

The proceedings in this case were commenced before W. C. Jackson, Esq., a justice of the peace of the county of Erie, by the Commonwealth of Pennsylvania at the instance of Harris Johnson who sues for himself as well as for Wayne township in the county of Erie, against Gordon Betts.

The record of the justice was as follows :—

" Summons in debt for the recovery of penalty not exceeding $300.   March 1st 1873, summons issued to William Kincaid, constable of Wayne township, returnable March 8th 1873. * * * March 8th 1873, parties appear.   Plaintiff complains that the defendant has violated the provisions of the 67th sect. of the Act of Assembly, relating to roads, highways and bridges, passed the 13th day of June 1836, by having in the month of July or August 1872, torn out, destroyed and filled up a drain made by the road commissioners of Wayne township, in the county of Erie, in the public road in said township of Wayne, leading from Carter Hill, &c., * * * and so destroying and filling up said drain that the

26 P. F. SMITH—30

[Commonwealth *v.* Betts.]

water could not cross said road:—without the authority and against the order of the said road commissioners of Wayne township aforesaid, for the (then) time being, whereby he incurred a penalty of twenty dollars, which plaintiff claims."

The record then states the examination of witnesses for the prosecution and the overruling as irrelevant, an offer of evidence by the defendant, and proceeds:—

"After hearing the parties, their proofs and allegations, I do postpone giving judgment till Saturday, March 15th 1873, at 4 o'clock P. M., with notice of said postponement to both parties.

"And now, March 15th 1873, the justice publicly declares that the defendant is convicted of the said offence against the form of the statute, and gives judgment for the plaintiff for twenty dollars, to be distributed as the Act of Assembly aforesaid doth direct."

The defendant removed the record of the justice to the Court of Common Pleas by certiorari.

One of the exceptions to the justice's proceedings was that " the act complained of is not such an act as the 67th sect. of the Act of Assembly of June 13th 1836 contemplates."

The 67th and 68th sect. of the Act of June 13th 1836, Pamph. L. 564, 2 Br. Purd. 1284, pl. 98, 99, are as follows :—

67. " If any person shall stop, fill up or injure any drain or ditch made by any supervisor for the purpose of draining the water from any public road or highway, or shall divert or change the course thereof, without the authority of the supervisor for the time being, such person shall, for every such offence, forfeit and pay a sum not less than four dollars nor more than twenty dollars."

68. " If any person shall stop or obstruct any public road or highway, or shall commit any nuisance thereon by felling trees, making fences, turning the road, or in any other way, and do not on notice given by the supervisors of the respective township, forthwith remove the nuisance and repair the damage done to such road, such person shall, for every such offence, forfeit and pay a sum not less than ten dollars nor more than forty dollars.    Provided, That nothing in this section shall be deemed to debar an indictment for any such nuisance, as in case of misdemeanor at common law."

In deciding the case Vincent, J., said :—

" The 31st sect. of the Act of 1836 requires supervisors to make and maintain sufficient causeways of stone or timber, in making roads on marshy, swampy grounds, and to make and maintain sufficient bridges over small creeks and rivulets.

" The 32d sect. provides that the supervisors shall also have power and authority, as aforesaid—that is as in case of obtaining materials, to enter upon any such lands or enclosures, and cut open, maintain and repair all such drains or ditches through the same as they shall judge necessary to carry the water from said roads.

[Commonwealth v. Betts.]

" In the 67th sect. a penalty is provided of not less than four nor more than twenty dollars against any person who shall stop, fill up or injure any drain or ditch made by any supervisor, for the purpose of draining the water from any public road or highway, or who shall divert or change the course thereof without the authority of the supervisor for the time being.

" The proceedings under review were commenced under this section, and the transcript sets out that the act complained of consisted in the tearing out, destroying and filling up by the plaintiff in error and defendant below of a drain made by the Road Commissioners of Wayne township, in a certain public road in said township, and so filling up and destroying said drain that water could not cross said road, and that, without the authority or consent of said road commissioners.

" The law under which this suit is brought is a penal one, and must be strictly construed, and unless the offence charged is not only clearly but technically covered by sect. 67 of the Act of 1836, the suit cannot be sustained.

" More especially are we called upon so to construe it if there be another penalty imposed by the act for the offence alleged.

" The act charged does not consist in interfering with a ditch or drain made and maintained to carry water from a public road, but for filling up and destroying a ditch or drain across the highway incidentally needing a culvert or sluiceway under the road for the purpose of passing the water from one side of the highway to the other, and not having, so far as the record shows, any connection whatever with a drain or ditch used for the purpose of carrying water from the road.

" Such an act as the one alleged is a nuisance and injurious to the highway, and, in our opinion, clearly punishable under the 68th sect. of the act which provides the penalty of fine in a suit before a magistrate, and also of indictment at common law against any person who shall obstruct any public road or highway, or shall commit any nuisance thereon by felling trees, making fences, turning the road, or in any other way, and also do not on notice given by the supervisor of the respective township, forthwith remove the nuisance and repair the damage done to such road.

" Presumptively it is a nuisance in the highway to thereon stop a sluice or culvert passing under it, put there by the authority of one legally in charge of the road, nor could it be a defence to an indictment for such an act, that, in the opinion of the perpetrator, the road was as well or better without it.

" That is not a question for the decision of a private citizen, but exclusively for the judgment and decision of the road commissioners, nor can the correctness of their decision be inquired into collaterally.

" The 67th sect. is intended, no doubt, to punish the owners or

[Commonwealth *v.* Betts.]

occupants of such lands and enclosures if they interfere with the drains or ditches cut and opened through their lands, a very necessary prevention to very natural acts on the part of such owners under many conceivable circumstances, which the penalties in the 68th sect. are for those who have less excuse for interfering with the acts of the road commissioners, also, in fact, are inexcusable trespassers on the rights of the public.

"For the reasons we have given we are of the opinion the justice was right in rejecting the testimony offered by the defendant. If the road commissioners, or either of them, has acted maliciously or partially in his office, there is a remedy by indictment against him or them, for such conduct would be a misdemeanor in office; but until that is judicially established in a direct proceeding for that purpose, the legal presumption is that they have acted in good faith and for the best interest of the public.

"We are also of the opinion for the reasons given that the proceedings in this case were commenced under the wrong section of the act, and they must therefore be reversed by the court."

The judgment of the justice was reversed. The relator removed the record to the Supreme Court by certiorari and assigned the reversal of the judgment of the justice for error.

When the cause came up for argument in the Supreme Court, a motion was made to quash the writ of error on the ground that the judgment of the Court of Common Pleas was final under the Act of March 20th 1810, sect. 24, 5 Smith's L. 172, 1 Br. Purd. 607, pl. 26.

*Benson* and *Brainard*, for certiorari.

*G. A. Allen*, contrà.

Chief Justice AGNEW delivered the opinion of the court, January 4th 1875.

A motion was made to quash this writ of error on the ground that the judgment of the Court of Common Pleas was final under the Act of 20th of March 1810. But that court owes its power to review the proceedings of justices of the peace to a wider and higher source than the Act of 1810. The 8th section of the 5th article of the Constitution of 1790, gave to it the like power possessed by the Supreme Court to issue writs of certiorari to justices of the peace to cause their proceedings to be brought before them, and the like right and justice to be done. The power of the Supreme Court was very ample under the Act of May 22d 1822, and is equally extensive under the Act of June 16th 1836: See Commonwealth *v.* Beaumont, 4 Rawle 366; and Appeal of the Commissioners of Northampton, 7 P. F. Smith 452. The true question, therefore is, whether the proceeding before the jus-

tice in this case was such a *civil* proceeding under the 22d section of the Act of 1810, as that section makes final when decided by the Court of Common Pleas, or such as by the 24th section is forbidden to be reviewed by the Supreme Court. There are two cases seemingly opposed to the exercise of the power of this court, to wit : Frick *v.* Patton, 2 Rawle 20, and Spicer *v.* Rees, 5 Rawle 119. In both cases it was held the cause could not be removed against the prohibition of the 24th section, " that no writ of error issued by or out of the Supreme Court to any justice of the peace, in any *civil* suit or action, shall be available to remove the proceeding before such justice of the peace : 5 Smith's Laws 172. Frick *v.* Patton is, however, free of difficulty, for, though a special proceeding under the Act of 13th April 1807, relating to strays, it was clearly a civil action by the party injured for the damage done, and expenses incurred. Spicer *v.* Rees is different, and seems to be more to the point, yet, when examined, will be found not in the way. The plaintiff brought an action in his own name for the penalty of five dollars under an ordinance of Philadelphia forbidding the sale of beef in certain market-houses. The case presented the singular fact that the eminent counsel on both sides, Messrs. Olmsted, Biddle, Meredith, Smith and Chauncey, not only conceded the power to issue the certiorari, but actually argued in its favor. Chief Justice Gibson, however, delivered the opinion of this court, holding that the 24th section of the Act of 1810, forbade the certiorari on the ground held by Lord Mansfield, in Atcheson *v.* Everitt, Cowper 382, that actions when popular are not criminal prosecutions, but civil suits. But Atcheson *v.* Everitt, like Spicer *v.* Rees, was an action by a private person, in his own name, and not in the name of the king. It was an action of debt for a penalty under the Statute of 2 Geo. II., c. 24, § 7, against bribery at elections. The real question was, whether a Quaker could be affirmed as a witness in the action, it being conceded he could not be, if the proceeding were a criminal prosecution. Lord Mansfield held, that it was a civil action, and therefore the Quaker could be affirmed. But his opinion throughout is a strong defence of the right of the Quakers to be heard as witnesses on their affirmations, in all cases. And it may also be noticed that Lord Mansfield himself had before, in Davey *v.* Baker, 4 Burrows 471, held a declaration under this same statute (2 Geo. II., chap. 24, § 7) to be bad, on the ground that the proceeding was a *criminal charge*, and the declaration therefore wanting in sufficient certainty. Yates, J., agreed with him. Another feature in Spicer *v.* Rees makes it still more remarkable. To support the position, that the proceeding was civil, and the certiorari forbidden by the 24th section of the Act of 1810, Chief Justice Gibson was compelled to deny the authority of Justice Duncan's opinion in Buckwalter *v.* U. S., 11 S. & R. 193, that an action of debt for a

[Commonwealth *v.* Betts.]

penalty was not within the Compulsory Arbitration Act, because founded on a penal statute. In that case Justice Duncan cited Davey *v.* Baker and Lord Mansfield and Justice Yates, as his authority. But it is not intended to deny the authority of Spicer *v.* Rees, that where the action is by a private citizen in debt for a popular penalty, it is such a civil action as may not be removed by certiorari or writ of error. That case is plainly distinguishable from this, both in its facts and upon authority. The 67th section of the General Road Laws of 1836, under which this proceeding took place, makes the act of filling up or injuring a drain for the public use, an offence for which the party shall forfeit a sum not less than four nor more than twenty dollars. Had no specific remedy been given in the act, this would have been an indictable offence in the Quarter Sessions : Gerheart *v.* Dixon, 1 Barr 228. Possibly an indictment would lie at all events, according to Chief Justice Gibson in Wood *v.* Commonwealth, 12 S. & R. 213–217. By the 78th section of the General Road Law of 1836, all fines and pecuniary penalties which may be incurred under any of the provisions of the act shall be recovered in the *name of the Commonwealth*, at the instance of any person who will sue therefor, in the same manner as debts of like amount are recoverable, with costs, one moiety for the use of the person suing, and the other for the township for the use of the road. The prohibited act, therefore, being a public offence, and the action in the name of the state herself, the action is really for a *criminal charge*, and therefore does not fall properly within the 22d section, or the 24th section of Act of 1810.

On this point we have authority also ; thus in Clark *v.* Yeat, 4 Binney 185, it was held that the 22d section does not apply to a landlord and tenant proceeding before two justices. In Lenox *v.* McCall, 3 S. & R. 95, it was held that the 24th section does not apply to a proceeding before two justices by a purchaser at sheriff's sale to recover the possession from the defendant in the execution. Caughey *v.* The City of Pittsburg, 12 S. & R. 53, was an action before a justice by a citizen for a penalty under an ordinance of the city prohibiting the buying of flour to sell again within market-houses. The Court of Common Pleas quashed the certiorari as being too late under the 22d section of the Act of 1810, but on a writ of error, this court reversed the order to quash, on the ground that the suit was not within the provision of the 22d section. The Commonwealth *v.* Burkhart, 11 Harris 521, was a writ of error to remove a proceeding by certiorari to a justice of the peace on a summary conviction for disturbing a religious meeting. This court refused a motion to quash the writ, holding that the 22d section of the Act of 1810 applied only to the jurisdiction given by that act. These cases are directly upon the interpretation of sections 22 and 24 of the Act of 1810. There are other cases

[Commonwealth v. Betts.]

where the jurisdiction of this court has been exercised without a hint that it was affected by the Act of 1810. The Commonwealth *ex rel.* Wilson v. Fourteen Hogs, 10 S. & R. 393, was a proceeding before a single justice under the act prohibiting hogs from running at large without rings in their noses and yokes on their necks. It was expressly held that a certiorari lay to the justice in that case. Johnston v. Commonwealth, 10 Harris 102, was a certiorari to a single alderman exercising the powers of a justice of the peace in the case of the breach of the Sunday law. Van Swartow v. Commonwealth, 12 Harris 131, was a certiorari to an alderman to remove his record of conviction and penalty, under the Act of 1851, for selling liquors on Sunday. Scully v. Commonwealth, 11 Casey 511, was a certiorari to a justice to bring up his proceedings for a breach of the Sunday law. Commonwealth v. Borden, 11 P. F. Smith 272, was a writ of error to the Court of Common Pleas upon a certiorari to a justice in a writ upon the law against unlawful hunting. The judgment of the Court of Common Pleas was reversed and that of the justice affirmed.

All these cases underwent examination, and this court rendered a final judgment. It may be proper also to remark, that the question, whether a writ of error would lie, was determined in several cases, and it was held that it would to the Court of Common Pleas, on the ground, that after the case is brought into that court from the justice, the proceeding is in the course of the common law: Ruhlman v. Commonwealth, 5 Binney 27; Commonwealth v. Burkhart, 11 Harris 521; Beale v. Dougherty, 3 Binney 435; Clark v. Yeat, 4 Binney 185.

Finally, it has been held in several cases, that the jurisdiction of this court cannot be taken away except by express terms or necessary implication: Overseers v. Smith, 2 S. & R. 366; and see note to 2 Brightly's Dig., p. 1350. It is to be noticed that if our jurisdiction in this case were held to be taken away, it would be upon the merest inference, not necessary, and certainly not irresistible. This action is not brought under the Act of March 20th 1810, but under the General Road Law of 1836. When the 75th section of the latter act gave the remedy for the recovery of penalties incurred under the act "in the same manner as debts of like amount are recoverable with costs," it adopted the provision of the Act of 1810 for the form of the action and mode of proceeding to recover the penalty, but did not necessarily take away the jurisdiction of this court to supervise the proceeding, and keep the inferior tribunals within their proper bounds. We are therefore of opinion that an action such as this, in the name of the Commonweath, to recover a penalty for a statutory offence, is not a civil action, such as is meant in the 22d and 24th sections of the Act of 1810. It may be so in form, but in its true nature and

[Commonwealth *v.* Betts.]

effect, it is a proceeding for a criminal offence, the supervision of which the essential interests of the public require to belong to this court.

The 67th section of the Road Laws of 13th March 1836, is in these words: "If any person shall stop, fill up or injure, any drain or ditch, made by a supervisor, for the purpose of draining the water from any public road or highway, or shall divert or change the course thereof without the authority of the supervisor for the time being, such person shall, for every such offence, forfeit and pay a sum not less than four dollars, nor more than twenty dollars." The complaint was, that the defendant tore out, destroyed, and filled up a drain made by the road commissioners of Wayne Township, in the public road, leading from, &c., and so destroyed and filled up said drain that the water could not cross said road, &c. The Court of Common Pleas reversed the conviction and judgment of the justice on the ground that the 67th section applied only to drains running from a road to carry away the water from it, and not to a drain *crossing* a road. This was an error. The interpretation is too narrow. The 67th section is the only one in the act for the protection of drains. This interpretation leaves all hill-side drains unprotected, while these are more numerous and important than all others. Roads on hill-sides must be protected from the wash of the rain, which, running down from above, strikes the road and cuts it away if not properly ditched. The ditch or drain necessarily runs along the inner side of the road next to the hill and must be carried across the road in small drains at short distances apart. If the entire wash from the hillside be permitted to run on the inner side to the bottom, it increases as it goes, until swollen to a flood, ofttimes it cuts out deep gullies, destroys the road and endangers travel. Hence, to affirm that a drain across the road is not in the language of the act "for the purpose of draining the water *from* the road or highway," is to deny the fact, and ignore its true use and most valuable purpose. It does drain the water from the road, unless we can stay the course of nature and forbid the falling rain from descending the sides and flooding the road with water. The man who destroys these road-drains closes the safety-valves of the flood poured upon the earth, by a higher power, endangers all who travel, and deserves the punishment the laws visit upon the offence. The certiorari was within the letter and spirit of the act. The judgment of the Court of Common Pleas is therefore reversed, and that of the justice is affirmed, and the record is ordered to be remitted for execution.