## Alexander & Co. *v.* Goldstein.

*Appeals—Judgment of common pleas—Certiorari to justice—Trover and conversion.*

The provision of the 22d section of the Act of March 20, 1810, 5 Sm. L. 161, by special enactment of the Act of March 22, 1814, 6 Sm. L. 182, applies to all cases brought thereunder, hence it follows the judgment of the common pleas is final in all cases of certiorari to the judgment of a justice in actions of trover and conversion and trespass arising under said act of 1814.

*Jurisdiction, J. P.—Trover and conversion.*

There can be no doubt that section 2 of the Act of March 20, 1810, 5 Sm. L. 161, and sections 1 and 4 of the Act of March 22, 1814, 6 Sm. L. 182, give to justices of the peace and aldermen acting as such, jurisdiction in actions of trover and conversion, to be commenced by either summons or capias if the defendant is not a freeholder or female.

This jurisdiction is not affected by the provisions of the 1st, 23d and 24th sections of the Act of 1842, P. L. 339, in cases where the property came into the possession of the defendant wrongfully, and not under a contract. Even though the plaintiff may have the right to waive the tort and bring an equitable action on an implied promise to return it.

Argued April 17, 1900. Appeal, No. 104, April T., 1900, by defendant, in a suit of Alexander & Co. against H. Goldstein, from decree of C. P. Washington Co., Nov. T., 1899, No. 138, refusing exceptions to the record of an alderman and confirming his judgment. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Per Curiam.

Certiorari to judgment of an alderman. Before MCILVAINE P. J.

It appears from the record that a certiorari was directed to John Holland, alderman, for the purpose of determining the validity of a judgment and execution under which defendant was arrested and delivered into the custody of the sheriff of Washington county.

Other essential facts sufficiently appear in the opinion of the court below.

The return of the alderman in this case is as follows:

"ALEXANDER & CO.,  ⎫  Transcript from the docket
         v.        ⎬  of John Holland, alderman.
H. GOLDSTEIN.   ⎰  Second ward, Monongahela
                   ⎱  City, Washington Co., Pa.

" October 11, 1899, capias issued to Dewit Parkinson, constable, upon the sworn complaint of Morton Black, agent of plaintiff, as follows: That the defendant, H. Goldstein, at Monongahela city, Washington county, Pennsylvania, on Monday, October 9, A. D. 1899, came into the possession of $100, lawful money of the United States, then and there being the money and property of Alexander & Co., that possession thereof was obtained through mistake of affiant in balancing the bank book of defendant, and then and there in and through such mistake said money was paid to said defendant, who, since having been informed of said mistake, wrongfully, fraudulently and illegally refused to return the same.  Whereupon affiant says that said plaintiff has unjustly suffered damages by said fraudulent acts of defendant and brings this action of trespass in trover and conversion to recover said currency or money or the value thereof.  Same day defendant was arrested and being at office at 10 P. M. was required to furnish bail in $300 for his appearance at office, October 13, 1899, at 10 A. M. for trial; upon his failure to furnish bail, he was placed in charge of the said constable Dewit Parkinson, until said time of trial, he being a nonfreeholder.

" Now, October 13, 1899, 10 o'clock A. M., parties appear.  Defendant refused to plead to complaint of plaintiff.  Morton Black sworn for plaintiff.  Defendant refused to testify, and offered no evidence.  Whereupon judgment publicly for plaintiff in $100 and costs of suit.  Same day, to wit: October 13, 1899, execution with capias issued to D. C. Parkinson, constable returnable November 2, 1899.

" October 14, 1899, execution returned, 'no goods, and the defendant in custody.'

" October 16, 1899, proceedings returned to court of common pleas on certiorari.  (In habeas corpus proceeding.)

" Amended return: And now, October 14, 1899, comes Dewit C. Parkinson, constable, and returns that he made diligent search for any goods and chattels belonging to the said defend-

ant within said county, and having found none, that he by authority of this writ has taken the body of the said defendant into his custody and conveyed him to the common jail of said county there to be safely kept by the sheriff or keeper thereof until the judgment, interest and costs of this action be fully paid or he shall otherwise be discharged by law. So answers Dewit C. Parkinson, constable.

" WASHINGTON COUNTY,

" MONONGAHELA CITY :

" I certify that the above is a correct transcript of the proceedings had and remaining before me in the above suit and of record on my docket.

" Witness my hand and seal this 1st day of November, A. D. 1899.

            " JOHN HOLLAND,    [Seal.]
                      " Alderman."

The exceptions taken to the record of the alderman as certified, are as follows :

[1. This being an action of trover and conversion to recover money received by H. Goldstein from Alexander & Company, through a mistake, the alderman had no jurisdiction to commence the proceeding by issuing a capias for the arrest of the defendant, H. Goldstein.] [1]

[2. The action not having been brought to recover money collected by a public officer nor for official misconduct, the alderman had no jurisdiction to issue a capias for the arrest of the defendant, H. Goldstein.] [2]

3. The execution containing a warrant of arrest upon which the defendant, H. Goldstein, was committed to the custody of the sheriff is illegal and void for the reason that prior to its issuance no affidavit was made that the judgment was for the recovery of money collected by a public officer or for official misconduct, as required by section 23 of the Act of July 12, 1842, P. L. 339.

[4. Trover and conversion will not lie to recover an overpayment by a bank to a depositor by mistake, and the capias and execution containing a warrant of arrest are illegal and void.] [3]

5. The alderman had no jurisdiction to issue a capias.

6. The alderman had no jurisdiction to issue an execution containing a warrant of arrest.

7. There is no allegation upon the record that Alexander & Company is a corporation, and the names of the individual members of the firm are not given.

The last exception was not pressed at the argument, and the first six raise substantially one question, and that is that the record on its face shows that the alderman did not have jurisdiction to issue a capias for the arrest of the defendant below; that the suit should have been instituted by a summons for money had and received, and that any judgment recovered could only be enforced by a sale of the defendant's property on an execution.

There can be no doubt that section 2 of the Act of March 20, 1810, 5 Sm. L. 162, and sections 1 and 4 of the Act of March 22, 1814, 6 Sm. L. 182, give to justices of the peace and aldermen acting as such, jurisdiction in actions of trover and conversion, to be commenced by either summons or capias if the defendant is not a freeholder or female. Therefore, John Holland, alderman, who is ex officio a justice of the peace (Act of March 24, 1873, P. L. 377, sec. 90), had jurisdiction in actions of trover and conversion when the plaintiffs below instituted their suit, and the question for our decision is not had he jurisdiction to try such an action, but do the facts in the case as shown by the record vindicate his action, first, in bringing an action of trover and conversion, and second, in issuing a capias in place of a summons in the case at bar.

The action of trover and conversion, which is a species of action on the case, lies for the recovery of damages for the wrongful conversion of personal property, whether consisting of merchandise, money, bonds, notes, title deeds or any other chattel merely personal, in which a man may have a valuable property. It is founded on the supposition that the chattel came into the defendant's possession by finding, and that he afterward converted it to his own use; but the allegation of finding is, in general, a fiction and it is the conversion only that is material and traversable: 2 Troubat & Haley's Pr., sec. 1559.

It lies for money, though it be not in a bag or otherwise distinguishable from other coin, because the thing itself is not to be recoverable in this action but merely damages for the conversion: 2 Troubat & Haley's Pr. sec. 1559.

Trover lies for the conversion of money when there is an obligation on the part of the defendant to return the specific coin or notes intrusted to his care: 26 Am. & Eng. Ency. of Law, 766.

The test seems to be, is there any obligation on the part of the defendant to deliver the specific money to the plaintiff? Of course, the action is always maintainable where the defendant unlawfully took the money out of the possession of the plaintiff: 26 Am. & Eng. Ency. of Law, 766, note 3.

If the law of our commonwealth is as stated in these citations, then, in our opinion, there can be no doubt that an action of trover and conversion would lie against the defendant below if, after knowing that he had in his possession $100 in money which belonged to the plaintiff in error paid to him by mistake, he refused upon demand to return it to its rightful owner.

This brings us to the vital question in this case and that is, should the action have been commenced by summons, and was the issuance of a capias unlawful under the provision of the Act of July 12, 1842, P. L. 339? The 1st section of that act provides that from and after its passage, "no person shall be arrested or imprisoned on any civil process issuing out of any court of this commonwealth in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the nonperformance of any contract," except in certain cases named which would not include the case at bar. The 23d and 24th sections provide that no execution with clause of capias, and that no capias shall issue on any judgment entered by a justice of the peace, "upon any demand arising upon contract express or implied," except "that such judgment was for the recovery of money collected by any public officer or for official misconduct."

Does the record of the alderman before us show that the demand of the plaintiff in error was "founded upon contract or due upon any contract, express or implied, or for the recovery of any damages for the nonperformance of any contract," or does it show that the judgment entered was "upon a demand arising upon contract, express or implied?" If it does,

518, (1900).]          Opinion of Court below.

the judgment must be reversed; if it does not, it should be affirmed.

The defendant in error was clearly guilty of a tort when he refused to return to the plaintiffs in error the $100 of their money which he knew he had by mistake received from them, and which he still had in his possession and control; such a refusal was a conversion.

Now, there are two kinds of torts; one dependent upon a contract, and the other independent of any contract. Addison on Torts, at page 15, expresses the principle in this way: A tort may be dependent upon or independent of contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract, so that an action ex contractu for the breach of the contract, or an action ex delicto for the breach may be brought at the option of the plaintiff. When there is a violation of a legal right independent of any contract between the parties, such as an invasion of a right of property . . . . then the tort is not founded on contract, and an action ex delicto is alone maintainable. Again, there are cases in which a tort may be so committed as to give rise to an implied promise to pay, as where one wrongfully disposes of the property of another and receives the consideration therefor. In such cases the injured party may waive the tort and sue on the implied promise to pay the consideration received by the wrongdoer. We have, then, cases in which the plaintiff can elect between an action ex contractu and ex delicto, cases in which he can waive the tort and bring an equitable action on an implied promise growing out of the wrongful act of the defendant, and cases in which he can bring only an action ex delicto.

It is clearly the law that where a plaintiff has an election between an action ex contractu and an action ex delicto, the defendant cannot, since the act of 1842, be arrested on a capias.

The cases of Philadelphia Coal Company v. Huntzinger, 6 W. N. C. 300, and Gallagher v. Norcross, 7 Phila. 623, cited by counsel for the plaintiff in error, and many others that might be cited, fully support this contention.

But in a case where the plaintiff may waive the tort and bring an equitable action on an implied promise, growing

wholly out of the wrongful act of the defendant, such is not the law, but on the contrary a capias may issue.

In this latter class of cases, where an action of assumpsit for money had and received is sustained, the action does not rest on an express or implied contract between the parties; the implied promise, which is the foundation of the action, is in a sense a fiction of law which the defendant cannot gainsay without setting up his own turpitude, and this the law will not allow him to do. Such an action has been held to be an equitable action and a substitute for a bill in equity. To illustrate: A person wrongfully or by mistake comes into the possession of the coat of another, and with knowledge of the ownership he sells it to a third party for $25.00; the owner could waive the tort and bring an action of assumpsit for the $25.00 as money had and received for his use based on an implied promise; in such a case the implied promise would be a fiction of law, but the defendant could not controvert the alleged promise without setting up his tortuous conduct, and this the law will not permit. In our opinion such an implied promise does not come within the meaning of the act of 1842, when it speaks of actions and judgments "founded upon contracts, express or implied," etc., a fiction implied promise is not a contract.

In the case of Hopper v. Williams, 2 Clark, 448, where the defendant was arrested on a capias and sought to be released on common bail, the court says: "This action is not brought upon a contract, but to recover damages for deceit and fraud, and therefore is not within the provision of the act referred to (1842). A party may in many cases waive a tort and bring assumpsit, as the plaintiff might have done here, declaring the money had and received to his use, if the note had been disposed of and the proceeds actually received by the defendant. But it will not certainly be contended that he is obliged to adopt that course."

In the brief of the counsel for the plaintiff in error the case of Brown v. Treat, 1 Hill, 225, is cited to sustain his contention. In Suydam v. Smith, 7 Hill, 182, that case is explained and limited, and the court held (the law in New York being practically the same as our act of 1842), that "where there has been a wrongful conversion of goods for which trover will

lie, the defendant may be held in bail in whatever way the property came into his possession. This rule applies to the case of a warehouseman who has rendered himself liable in trover, notwithstanding the plaintiff has the right to waive the tort and proceed upon the contract of bailment."

E. D. Rundell made a contract with Kalbfus & Jones whereby he agreed to buy hay on joint account with them, he to do all the work and Kalbfus & Jones to furnish the money and to do all the selling, neither party to work with or make similar con‡ tracts with other parties. Rundell bought hay with $1,000 that was furnished by Kalbfus & Jones under their agreement; there was a sudden rise in the price of hay and Rundell wrongfully turned over the hay to another firm, Billings & Fell. Kalbfus & Jones obtained judgment against Rundell for $552 damages in a suit against him and Billings & Fell for conspiracy. A capias ad satisfaciendum was issued on this judgment against Rundell and he was arrested, whereupon a rule issued to show cause why the writ should not be quashed. SEARLE, P. J., discharged the rule, and in his opinion refers to the case of Bower v. Burdick, 3 Clark, 226, relied upon by the plaintiff in error in the case at bar, as not ruling the question before him. The Supreme Court affirmed the ruling of Judge SEARLE, or in a per curiam opinion says that the judgment was in " an action for a tort and not upon a mere breach of contract:" Kalbfus & Jones v. E. D. Rundell, 134 Pa. 103.

An inspection of the record returned by Alderman Holland shows that the plaintiff in error was a depositor in the bank of the defendant in error, and came to the bank to receive the balance that stood to his credit on the books of the bank; that $100 was paid him by mistake in addition to what was the true balance due him ; that, after being informed of the mistake, he wrongfully and illegally refused to return the same, and that the action instituted was trover and conversion to recover damages " unjustly suffered by the plaintiff below by said fraudulent acts of the defendant below."

In our opinion this record does not show " a proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon contract express or implied, or for the recovery of any damages for the nonperformance of any contract," or that the judgment entered by the

alderman was " rendered upon a demand arising upon contract express or implied" within the meaning of sections 1 and 23 of the act of 1842, and, therefore, the judgment of the alderman must be affirmed.

[And now, November 9, 1899, this cause came on to be heard, and was argued by counsel, whereupon upon due consideration, the exceptions to the record of the alderman are overruled and his judgment affirmed.] [4]

November 9, 1899, counsel for plaintiff in error excepts to the foregoing decree, and at their request the exception is noted and bill sealed. Defendant appealed.

*Errors assigned* were (1–3) in not sustaining the first, second and fourth exceptions to the record of the alderman, reciting same. (4) In entering decree, reciting same.

*R. W. Irwin*, with him *Jno. C. Bane*, for appellant.—Our contention is that trover and conversion does not lie where money had been paid by one person to another by mistake, or, in other words, where a banker pays to a depositor by mistake more money than is in the bank to his credit; and that even if an action of trover and conversion would lie, the justice has no jurisdiction to issue a warrant of arrest on the judgment: Phila. v. Huntzinger, 6 W. N. C. 300; Act of July 12, 1842, P. L. 339, and see P. & L. Digest, 2558; Gallagher v. Norcross, 7 Phila. 623.

The doctrine in all these cases is this : That since the passage of the act of 1842 in any case where assumpsit would lie no capias can issue under the act of 1836.

The precise question in the case at bar was decided in Muskegon Booming Co. v. Hendricks, 89 Mich. 172.

*W. S. Parker*, with him *Winfield McIlvaine*, for appellee.— And generally it may be said that trover will lie against any person who wrongfully detains the property of another, however the possession thereof may originally have been acquired: 6 Wait's Actions and Defenses, 133; Platt v. Tuttle, 23 Conn. 233.

To the same effect are our own cases of Rice v. Yocum, 155 Pa. 538, and Hower v. Ulrich, 156 Pa. 410.

PER CURIAM, May 24, 1900:

Section 4 of the Act of March 22, 1814, 6 Sm. L. 182, conferring upon justices of the peace jurisdiction of actions of trover and conversion and of actions of trespass provides, that the " process, return thereof, notices, awards, judgments and appeals, and the proceedings of justices, constables, referees and courts, and every proceeding necessary to carry this act into effect, which is not herein specially provided for, shall be made and done, under and according to the provisions and regulations in similar cases contained " in the Act of March 20, 1810, 5 Sm. L. 161. Therefore, the provision of the 22d section of the latter act, that " the judgment of the court of common pleas shall be final on all proceedings removed as aforesaid " (by certiorari) " by the said court, and no writ of error shall issue thereon," applies as well to the proceedings of justices of the peace in actions of trover and conversion and actions of trespass as to their proceedings in actions for the recovery of debts. It has been held, it is true, that the section applies only to proceedings under the provisions of the acts of 1810 and 1814 (as extended by the act of July 7, 1879, P. L. 194: Paper Co. v. Stoughton, 106 Pa. 458). It was upon that ground that the judgments of the common pleas were reviewed in the cases of Com. v. Burkhart, 23 Pa. 521, Com. v. Betts, 76 Pa. 465, and cases there cited, Strouse v. Lawrence, 160 Pa. 421, and our own case of Com. v. Davison, 11 Pa. Superior Ct. 130. But the present case does not come within the principle of any of those cases. It was an action of trover. The proceedings were under the act of 1814, not under a later act conferring a new jurisdiction, as in Strouse v. Lawrence. The jurisdiction to review them and to determine whether the justice proceeded regularly and according to law was vested exclusively in the common pleas, and its judgment was final and conclusive. See Crumley v. Coal Co., ante, p. 231, and cases there cited. In view of the imperative terms of the 22d and 24th sections of the act of 1810, we are of opinion that we have not jurisdiction to reverse the judgment of the common plea in such a case. We have, however, considered the question argued by counsel and conclude that no error was committed. The correctness of the judgment seems to us to be fully shown in the opinion filed by the learned judge of the court below.

Appeal quashed.