## Sterrett et al. v. The Royal Indemnity Company

*Walter G. Dugger*, of *Felix & Felix*, for plaintiffs.

*H. Orvel Sebring*, of *Morgan, Lewis & Bockius*, for defendant.

KUN, J., February 21, 1936.—Plaintiffs, as ancillary receivers of The Union Indemnity Company, filed an action in trespass against The Royal Indemnity Company. After the statement of claim was filed, defendant filed a statutory demurrer raising the question of law whether the facts pleaded in the statement of claim may be made the basis for a cause of action in trespass. The statement of claim sets forth that the defendant, The Royal Indemnity Company, on or about January 6, 1930, gave its surety bond to the Township of Lower Merion in the amount of $800,000, conditioned that the township treasurer would, inter alia, account and pay over all moneys of the township. The Union Indemnity Company and The New York Indemnity Company, which later was taken over completely by The Union Indemnity Company, each reinsured the obligation of The Royal Indemnity Company to the extent of one sixteenth of the surety bond. In October 1931, the Merion Title & Trust Company, in which the Treasurer of Lower Merion Township had on deposit the sum of $393,353.77, failed, and in settlement of its obligation The Royal Indemnity Company paid the sum of approximately $324,000 and obtained an assignment of the deposit account from the township treasurer. The Union Indemnity Company and The New York Indemnity Company in the course of time contributed together one eighth of the amount of this settlement. The Royal Indemnity Company received a dividend of five percent, amounting to $19,667.68, from the liquidators of the closed bank, and plaintiffs sued the defendant in trespass on the theory of conversion for a one-eighth share thereof, namely, $2,458.46. The relevant portion of the contract of reinsurance provides:

"The reinsurer shall be entitled to share with the Royal in the proportion which the amount of the reinsurance bears to the amount of said bond, in any and all collateral or indemnity held by the Royal in connection with said bond, and in any and all rights, recourses, and benefits accruing to the Royal in connection with said Bond, except the reinsurance agreements taken or which may hereafter be taken by the Royal for its sole use and benefit".

The briefs submitted, and particularly the one submitted on behalf of the plaintiffs, have gone somewhat far afield in discussing the question whether or not the defendant is entitled to claim a set-off. This anticipation on the part of the plaintiffs indicates their knowledge that defendant has a claim of set-off and suggests the reason for their having proceeded by an action in trespass, in which of course set-off cannot be pleaded. We do not approve of a litigant adopting a course which will preclude his adversary from even setting up a contention, entirely apart from the question whether or not the contention is supportable. The question whether defendant would have a right to a set-off even if the plaintiffs should sue in assumpsit, though extremely interesting, is not now before us.

As we understand it, the contention of the plaintiffs is that they might have procured an order from the court for the payment to them directly of their portion of the dividends under question, pointing to such an order obtained by them in Montgomery County Common Pleas Court for the direct payment to them of their portion of dividends subsequently declared; therefore the defendant, having received the first dividend and refusing to pay over to the plaintiffs their portion, is guilty of conversion of that portion. This is an obvious non sequitur. Because a person may be liable for something and even have no right of set-off to the claim, it does not follow that he is liable for it in trespass as for a conversion. In a case where money had actually been entrusted to a defendant to buy a property and commence the erection of

a building, and on defendant's failure to comply an action in trover was brought alleging wrongful conversion of the money, the court sustained a demurrer to the action, on the ground that trover did not lie. The court recognized that, while there may have been a conversion of the money in a sense, there was no legal conversion, as a requisite basis for an action in trover, because on the facts as pleaded the defendant was not obliged to keep the money intact for the plaintiff. He was of course liable to account, but that did not make him liable in trover on his failure to do so: Larson v. Dawson, 24 R. I. 317, 53 Atl. 93.

The order of the Montgomery County court is predicated on the contract of reinsurance and the application of the theory of subrogation, or, as Judge Knight who wrote the opinion properly stated, "more specifically" on the basis of an equitable assignment pro tanto of collateral and remedies to the plaintiffs' company by reason of its payment of its portion of the loss to the defendant insurer under the contract of reinsurance. We might make the same order on a similar showing although, as plaintiffs' right to a direct payment can be based only on equitable considerations, if defendant could show equally compelling considerations against the granting of the order we would not grant it. Insofar as plaintiffs' claim is asserted to be based on any theory of subrogation, we refer to the principle that it is never enforced where the equities are equal or where its enforcement would be to the prejudice of legal or equitable rights of others: Grand Council of Pennsylvania Royal Arcanum v. Cornelius, 198 Pa. 46. For instance, suppose the defendant should show that plaintiffs' company had collected sums in matters in which the defendant was the reinsurer and was entitled to an accounting on the same basis the plaintiffs are claiming in this suit, that is, a showing that it had rights of set-off on similar contracts or on equitable principles; it seems clear to us that plaintiffs in such a situation would not be entitled to an order the effect of

which would be to deprive defendant of equitable rights of equal dignity.

When the defendant settled the amount of the claim against it under its bond and received an assignment of the deposit account of the Treasurer of Lower Merion Township and thereafter received a dividend of five percent, it did so entirely lawfully. It was the defendant company which paid the loss and received the assignment of its principal's deposit account. The depositor had no relation with the plaintiffs whatever, contractual or otherwise. It was in no sense wrong for defendant to receive the dividend, though it may be under some obligation by reason of reinsurance contracts to pay some part of it to others, including plaintiffs. That does not make it guilty of conversion:

"There can be, however, no conversion of money, unless there was an obligation on the part of defendant to deliver specific money to plaintiff, or unless the money was wrongfully received by defendant": 65 C. J. 23, where it is also stated: ". . . money is a subject of conversion only when it is capable of being identified, and described as a specific chattel".

These principles have repeatedly been affirmed in Pennsylvania: Life Assn. v. Catlin, 2 Walk. 338; Borland v. Stokes, 120 Pa. 278; Davis v. Thompson, 10 Sadler 563; Alexander & Co. v. Goldstein, 13 Pa. Superior Ct. 518; Rapalje et al. v. Emory, 2 Dall. 51. See also Globe & Rutgers Fire Insurance Co. of N. Y. v. Fisher, 234 Mich. 258, 207 N. W. 884, where it was held that, although the form of action of trover had been abolished and a code action similar to the one in Pennsylvania was adopted, an action in the nature of trover, as the action in trespass in the instant case is, would not lie against an agent unless it was his duty to pay over to the principal the identical money or checks received in payment for premiums, the court saying: "Trover is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care."

The statement of claim before us does not on its own showing set forth a conversion of any specific money or other property which should have been turned over in specie or as such to the plaintiffs. The claim is specifically pleaded as under the contract of reinsurance, which gives the plaintiffs, on contributing to defendant its share of the loss, the right to share with the defendant in any collateral held or rights or benefits accruing to the defendant in connection with the bond. Any breach of that right is one arising clearly out of the contractual relationship between the parties, to redeem which an action in assumpsit is the only proper remedy. If there had been no such specific terms in the reinsurance contract between the parties, it could be contended that the right of the plaintiffs arose on the theory of either subrogation or, more accurately, equitable assignment, an equitable right enforceable under the old practice in an action of quasi-contract. In either case the plaintiffs' action would lie in assumpsit.

It was suggested at the argument that though the plaintiffs had a clear right of action in assumpsit, nevertheless they brought the action in trespass to make it impossible for the defendant to claim a set-off. If plaintiffs had a right to sue in trespass their motive for doing so would not affect that right. We pass no judgment on the very interesting question whether or not the defendant could set up a valid set-off though the action were in assumpsit, considering the terms of the reinsurance contract between the parties, which operates in effect to give the reinsurer an equitable assignment of the collateral held by the insurer and all "rights, recourses and benefits accruing" to it. It is also unnecessary for us to express an opinion whether or not the defendant could be regarded as in the nature of a trustee of so much of the dividend which it received as, under the contract of reinsurance, may be payable to the plaintiffs. Suffice it to say on this point that even as to money received in trust in the true sense to be disposed of in a defined way it is possible to have a set-off

if it arises out of or is connected with the trust relation. This is found in the quotation from Valley Butter Co. v. Minnesota Coöperative Creameries Assn., 300 Pa. 102, cited in the plaintiffs' brief. We have no way of knowing whether the supposed set-off of the defendant would be a valid one, considering the nature of the plaintiffs' claim. We are not settling this question for we do not have the necessary factors before us to settle it; nor is the settlement of that question at all relevant to the question now before us.

Even if it were assumed that defendant had no right of set-off against the plaintiffs, that would not affect our judgment on the validity of this suit in trespass. The action in trespass is improper because there has been no conversion. There has been no conversion because, under the facts pleaded, no money was wrongfully received by defendant and no specific money was turned over to the defendant which it was bound to turn over to plaintiffs. The case of Life Assn. v. Catlin, supra, was a much stronger one for the same contention by the plaintiff there, because the defendant, agent of plaintiff insurance company, had the duty to collect premiums and renewals and make remittances to the company, less commissions. On his failure to account fully, an action in trover was brought against him, alleging a conversion of the money withheld, a seemingly sound position. The Supreme Court, however, made clear the difference between a duty to account and a conversion. The court held that trover did not lie on the facts pleaded, saying: "There was no obligation to pay the identical coin or note, or notes he [the defendant] had received." That is the indispensable element to support a charge of conversion of money, upon which to predicate an action in the nature of trover, now by statute included in the action of trespass.

We are clearly of the opinion that the statement of claim does not set forth a valid action in trespass, and the statutory demurrer filed on that ground is sustained.