15638

RAY v. PILGRIM HEALTH & LIFE INSURANCE COMPANY

(34 S. E. (2d), 218)

*Mr. Edgar A. Brown* and *Mr. James Julien Bush,* both of Barnwell, S. C., Counsel for Appellant,

*Mr. Thomas H. Peoples,* of Blackville, S. C., Counsel for Respondent,

May 30, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

Alma Ray, respondent, brought this action against Pilgrim Health and Life Insurance Company, appellant, to recover actual and punitive damages in the sum of $1,000.00, alleged to have been sustained by reason of the fraudulent conversion by appellant of the sum of $5.00 which respondent paid to appellant to be credited on the premium of a life insurance policy for which she had applied. At the conclusion of the testimony, appellant made a motion for a directed verdict which was refused by the trial Judge and the case submitted to the jury, resulting in a verdict against appellant for $5.00 and interest as actual damages and $40.00 as punitive damages. The only question necessary for determination is whether the Court below erred in refusing to direct a verdict in favor of appellant as to punitive damages.

On April 19, 1944, respondent, a resident of Blackville, South Carolina, made a written application to appellant through its district agent for an ordinary life insurance policy in the sum of $1,000.00, for which she agreed to pay an annual premium of $24.55. At the time of filing this application she paid $5.00 in cash which was to be credited on the premium, but the issuance of the policy was contingent on the payment of the balance of the premium and respondent's passing the necessary medical examination to be made by a physician at Blackville. Appellant offered testimony to the effect that the deposit above mentioned was required to defray the cost of the medical examination. According to respondent's testimony, she advised the district agent about a week after the application was made that she had decided not to take the policy, as she had all the insurance which she could carry, and requested a return of the $5.00 which she had paid, to which the agent replied that he would refund this money on May 20, 1944. Respondent never appeared for the medical examination. Respondent further testified that appellant made no effort to refund said amount until August 14th, when the local agent tendered to her appellant's

check for $5.00 which she refused because, "after I had to wait so long for my money, I didn't feel that they had treated me right." On August 15, 1944, the same day this action was commenced, appellant mailed said check to respondent. She received it on August 16th but immediately returned it to appellant.

Appellant's district agent testified that after the application was made he did not again see respondent until the latter part of May, when he requested her to go ahead and take the medical examination so that the policy could be issued, to which she replied that she was planning a trip to New York and requested that the whole matter be held in abeyance until she advised him further; and that he next saw respondent the latter part of June, when she stated that she had decided not to take the policy and requested a return of the $5.00 payment, to which he replied that he would make application to the Company for a refund of said amount. This money had previously been forwarded to the home office of the Company in Augusta, Georgia. According to appellant's testimony, the check representing the refund was issued on August 7th and on August 9th tendered by its local agent to respondent, who declined to accept it.

The action is one for an alleged conversion, which has been defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights." *Commercial Credit Co. v. Cook et al.,* 165 S. C., 387, 164 S. E., 17, 19; *Neel v. Clark,* 193 S. C., 412, 8 S. E. (2d), 740; *Powell v. A. K. Brown Motor Co.,* 200 S. C., 75, 20 S. E. (2d), 636. "Conversion may arise either by a wrongful taking of the chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or by wrongful detention." *Young v. Corbitt Motor Truck Co.,* 148 S. C., 511, 146 S. E., 534, 542; *Williams v. Haverty Furniture*

*Co.,* 182 S. C., 100, 188 S. E., 512. It is "a tort, a wrongful act, which in the nature of things cannot spring from the exercise of a legal right." *General Motors Acceptance Corporation v. Hanahan,* 146 S. C., 257, 143 S. E., 820, 823.

While money may be the subject of conversion, ■ *Abrahams & Co. v. Southwestern Railroad Bank,* 1 S. C., 441, 7 Am. Rep., 33, we do not think the evidence in this case supports such a cause of action. The item of $5.00 in controversy was not received by appellant in a fiduciary capacity. It was to be credited on the premium of the policy, for which application had been made. Appellant rightfully received this money and committed no wrongful ' act in commingling it with its own funds. There was no "unauthorized assumption and exercise of the right of ownership" over money belonging to another. There was no obligation on the part of appellant to keep this money in its original form as the identical property of respondent, or to keep said money intact. Appellant had a right to assume that respondent would take the necessary medical examination and if she successfully passed it, that she would pay the balance of the premium so that the policy could be issued. By mutual consent, the application for insurance was rescinded and appellant agreed to return the deposit of $5.00. If appellant failed to make this refund as agreed upon, such failure was a mere breach of the agreement for which it may have been liable in an action *ex contractu,* but no tort was thereby committed. The relation between the parties rested in contract. Under the circumstances presented, there was no conversion. *Randolph & Co. v. Walker,* 78 S. C., 157, 59 S. E., 856; *Industrial & General Trust v. Tod et al.,* 170 N. Y., 233, 63 N. E., 285; *Sorge v. Napolitano et al., Sup.,* 166 N. Y. S., 779; *Borland v. Stokes,* 120 Pa., 278, 14 A., 61; *Mercantile Co-operative Bank v. Trost,* 62 N. J. L., 476, 41 A., 685; *Hazelton v. Locke,* 104 Me., 164, 71 A.,

661, 20 L. R. A. (N. S.), 35, 15 Ann. Cas., 1009; *Marston v. Hill,* Tex. Civ. App., 32 S. W. (2d), 520.

As was said in *Walter v. Bennett,* 16 N. Y., 250, "whatever responsibility attaches * * * is upon the contract, and the plaintiff cannot, by changing the form of his action, change the nature of the defendant's obligation, and convert that into a tort which the law deems to be a simple breach of an agreement."

If the action be viewed as one for fraudulent breach of contract, we do not see how such a construction could be of any aid to the respondent in her effort to recover punitive damages. It is well established in this State that in order to recover punitive damages for breach of contract, it must be shown that the breach "was accomplished with a fraudulent intention, and was accompanied by a fraudulent act." *Williams v. Metropolitan Life Insurance Co.,* 173 S. C., 448, 176 S. E., 340, 345, and many other cases too numerous to be cited. There is no evidence in this case of fraud or fraudulent acts on the part of the appellant.

Appellant concedes its liability for the $5.00 item and only seeks a reversal of the judgment below with respect to the element of punitive damages. In view of this concession, we will not dismiss the entire cause of action. It is accordingly adjudged that the judgment of the lower Court be reversed as to the award of punitive damages.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.