19808

Chessie Mae PERRY, Respondent, v. UNITED INSURANCE COMPANY OF AMERICA, and Herbert Benton, Appellants

(204 S. E. (2d) 573)

352

*Messrs. Levi & Wittenberg,* of Sumter, and *Pauling & James,* of Darlington, *for Appellant United Insurance Company of America,*

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Appellant, Herbert Benton,*

*Messrs. Baker & Etheridge,* of Darlington, and *Ernest L. Cook,* of Hartsville, *for Respondent,*

*Messrs. Levi & Wittenberg,* of Sumter, and *Pauling & James,* of Darlington, *for Appellant United Insurance Company of America,* in Reply.

April 22, 1974.

*Per Curiam:*

This is an action to recover actual and punitive damages for the allegedly fraudulent conversion by the defendants-

appellants of a certain check, or the proceeds thereof, the property of the plaintiff-respondent, Chessie Mae Perry. Upon trial the jury returned a verdict for the plaintiff for actual damages in the amount of $86.10 and punitive damages in the amount of $5,000.00. Each of the defendants made a motion for judgment n. o. v. and for a new trial. Upon counsel for the plaintiff advising the court that plaintiff would consent to a new trial defense counsel withdrew their new trial motions and pursued only their respective motions for judgment n. o. v. Both defendants appeal from the denial of such motions.

It is elementary that in considering whether the defense motions for judgment n. o. v. were properly denied, all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff and we proceed to view the evidence and state the facts of the case in the light of such principle.

The defendant, United Insurance Company of America and United Fire Insurance Company are separate, but obviously closely affiliated legal entities. They apparently have the same home office, and at least in South Carolina, occupy the same offices and employ the same personnel, such personnel, at least in some instances, being paid by single checks issued by one company for services to both. The defendant, Herbert Benton, at the pertinent time, was the salaried staff manager of both companies at the Florence, South Carolina office. For convenience we shall hereinafter refer to the corporate defendant as United Life and its affiliated company as United Fire.

The plaintiff, Chessie Mae Perry, is the daughter of one Maggie Campbell, who was married to one James Campbell. Chessie Mae is the mother of ten children, at least two of whom spent some time with, and cared for, their Grandmother, Maggie Campbell, who was in ill health. In 1959 Chessie Mae applied to United Life for a $1,000.00 policy such being done at the suggestion of Maggie Camp-

bell, who wished an available burial fund for her daughter in the event of her demise. The policy was issued and kept at the home of Maggie Campbell rather than the home of Chessie Mae, both residences being in Hartsville. Both Chessie Mae and her mother contributed to the payments of premiums on this policy, about equally, but with the premiums being collected at the home of Maggie Campbell by the agent in charge of that particular debit.

Shortly prior to June, 1966, Maggie Campbell was hospitalized for a period of time and thereafter confined to bed, paralyzed in both legs. Her illness placed a strain on the family finances to the extent that difficulty was being experienced in keeping in force a number of insurance policies. The aforementioned insurance policy on Chessie Mae had a cash surrender value of $86.10 and at the suggestion of, or request of, Maggie Campbell, Chessie Mae agreed to, and did, apply for the cash surrender value of her policy. In doing so, she was quite willing that her mother have the benefit of most, if not all, of the proceeds, but was especially and primarily interested in getting the proceeds of the policy for the purpose of providing medicine and medical care for her ill mother.

Under date of June 14, 1966, United Life issued its check in the sum of $86.10 payable to Chessie Mae, such representing the cash surrender value of her surrendered policy. Upon the receipt of this check at the Florence District Office of United Life and its affiliate, it was given to Benton for delivery to Chessie Mae. Benton made no effort to deliver the check to Chessie Mae, although he knew where she lived, but instead took it to the home of Maggie Campbell where Maggie was abed being attended by a 15 year old daughter of Chessie Mae, one Mary Ann Perry. Benton did not tell Maggie Campbell that he had the check for Chessie May but instead told her that he knew she needed money and that he would arrange a loan for her but that she would have to sign a paper in connection therewith. Maggie welcomed the loan but was unable to sign

the paper and it was agreed that the 15 year old Mary Ann would sign for her grandmother. Benton then took the check, which was payable to Chessie Mae, turned it face down and instructed Mary Ann to sign the name of her mother as well as that of her grandmother on the "piece of paper" which neither Maggie nor Mary Ann knew to be a check. After having accomplished these signatures through Mary Ann, Benton gave Maggie the sum of $23.10.

In the course of the visit Benton tried to sell Maggie a fire insurance policy, issued by United Fire, on the contents of the Campbell home, such a policy having been previously applied for by James Campbell. Maggie, however, was not willing. The premiums on such a fire insurance policy were payable weekly at the rate of 95¢, and before Benton left the Campbell home he wrote out a receipt in the amount of $51.30, which paid the premiums on such policy for 54 weeks in advance. Such receipt was not shown to Maggie but placed by Benton where he knew Maggie kept other insurance papers. This receipt came to Maggie's attention shortly after the departure of Benton and she promptly protested, since she knew that she had neither purchased any fire insurance nor paid Benton $51.30. Thus of the proceeds of Chessie Mae's check in the amount of $86.10—$23.10 was given to Maggie and $51.30 was applied by Benton to the advance payments of premiums on a fire insurance policy issued to James Campbell, with which Chessie Mae was not at all concerned.

There is conflict of evidence as to what happened to the remaining $11.70. Benton contends that he gave Maggie slightly more than she says and that $4.80 was applied to reimburse Benton for premiums which he had advanced on life policies, with which Maggie and/or Chessie Mae were concerned and which had been about to lapse. Maggie denied that he was owed such an amount. Admittedly a portion of the proceeds of the check was actually received by United Life in payment of current premiums on a new policy issued on the life of Chessie Mae and also a new

policy issued on the life of one of Chessie Mae's daughters upon the application of one Steve Perry, a son of Chessie Mae. Benton, having cashed Chessie Mae's check and distributed the proceeds thereof as above set forth, in turn delivered the check, for value, to the branch office of United Life, which deposited the same.

As soon as Chessie Mae learned of the disposition made of her check she promptly consulted counsel who took the matter up with United Life. This action, however, was not brought for some four years thereafter. Apparently some negotiations went on from time to time as there is evidence, probably inadmissible if timely objected to, as to efforts or offers allegedly made by United Life to adjust or end the controversy with Chessie Mae.

The exceptions of United Life are 37 in number and occupy 25 pages of the printed record. They are quite long, argumentative in form and in clear violation of Supreme Court Rule 4, Section 6. While the exceptions of the appellant-Benton are much fewer in number, they are subject to the same criticism, although possibly to a lesser extent. Despite the failure of the exceptions to comply with the cited rule, we have considered such in the light of the questions stated and argued and found them all to be without merit.

We are satisfied that there was abundant evidence to support a verdict for actual and punitive damages against both defendants and that there was no error on the part of the lower court in denying the motions for judgment n. o. v.

Affirmed.

LITTLEJOHN, J., dissents.