## 20114

Kittie T. OWENS, Respondent, v. ANDREWS BANK & TRUST
COMPANY, Appellant.

(220 S. E. (2d) 116)

*Messrs. Moore, Flowers & Doar,* of Georgetown, *for Appellant,* cite:

*Messrs. Patrick J. Doyle, and Rosen & Rosen,* of George-
town, *for Respondent,* cite:

Nov. 20, 1975.

LITTLEJOHN, Justice:

This action was brought by Kittie T. Owens (plaintiff)
against the Andrews Bank & Trust Company (bank) to re-
cover actual and punitive damages for conversion of her
Christmas Club account. The trial court directed a verdict for
actual damages for conversion in the amount of $879.00 and
submitted the question of punitive damages to the jury, which
rendered a verdict of $4,121.00 punitive damages for plain-
tiff. The Bank has appealed.

Under the Christmas Club account plan, the Bank transferred $20.00 per week from a joint account, which plaintiff had with her husband, to her Christmas Club account. The husband was not a party to this Christmas Club account. A total of $879.00 was transferred in this manner to plaintiff's Club account over a period of months. Under the plan, the Club account was closed and checks prepared for all members, including plantiff, on November 14, 1973. The check made payable to plaintiff was sent to the Bank's Georgetown branch for delivery to her sometime in November. It is admitted that the check was not delivered with the others; the Bank says it was mailed in February; the plaintiff testified that she has never received it.

Plaintiff's husband was obligated to the Bank under certain financing arrangements. The Georgetown branch manager (Benton) admitted that he held up delivery of the check in order to pressure the husband into making good his personal obligation.

Plaintiff testified that she had called the Bank and talked to Benton sometime in December, and that he told her that her check would not be sent to her, but instead would be applied to her husband's obligation. On cross-examination, plaintiff testified that during her telephone conversation, Benton told her that he could take her to court, and that she then told him to hold the money if he was going to take her to court. Benton denied talking to plaintiff, but admitted that the husband had twice demanded delivery of the check and that, after the second demand, he placed the check in a box for outgoing mail at the Bank sometime in February of 1974. Bank records show that the check has never been presented for payment.

A Certified Public Accountant, whose firm is employed by the Bank to perform annual audits, testified that at all times the Bank has carried the amount owing to plaintiff as a liability and is liable for repayment of the amounts deposited by her in the Club account. He further testified that funds placed

in the Club account by depositors are commingled and lose their separate identity, and that the funds are used by the Bank as are all other funds on general deposit.

Officers of the Bank testified that because the Bank keeps its records by means of a computer, it does not keep carbon copies of checks issued to Club account members, nor were they aware of any requirement to do so.

Plaintiff's complaint alleged conversion of her account by the Bank, by willfully and knowingly refusing to pay her the funds after repeated demands, and by using the funds for its own benefit.

The Bank's answer denied that it had converted plaintiff's account and alleged it had issued a check (No. 29916) in the amount of $879.00 and mailed it to plaintiff. Further, the Bank alleged its willingness to issue another check to plaintiff.

In drawing the jury at the beginning of the trial, the judge inquired whether any juror was a depositor of the Bank. Several jurors indicated that they were, and were excused. Counsel for the Bank objected, but made no request for a *voir dire* examination. The jury was drawn and empaneled. The court was then recessed and convened the following day. Counsel then renewed his objection to the judge's excusing the jurors and stated that a *voir dire* examination should have been made. The judge overruled counsel's contention, stating that it came too late.

In his charge to the jury, the trial judge read Rule 4-0 of the State Board of Bank Control. This rule names records to be kept by banks and the minimum period for which they are to be retained.

The Bank's exceptions raise the following four questions:

1. Was it error to excuse those jurors who were depositors with the Bank, without examining them on their *voir dire?*

2. Was it error for the court to direct a verdict for actual damages, ruling that the Bank had converted plaintiff's Christmas Club account?

3. Was it error to find that the Uniform Commercial Code did not limit the Bank's liability to the amount on deposit in her Christmas Club account?

4. Was it error for the court to charge the jury Rule 4-0 of the State Board of Bank Control?

We take up the Bank's first contention that the court erred in not examining on *voir dire* those jurors who were depositors of the Bank before determining whether they be excused.

It is apparent from the record that although counsel objected to the jurors being excused, he did not move the court to conduct a *voir dire* examination until after the jury was emplaneled. Section 38-202, Code of Laws of South Carolina, 1962, provides:

"The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror . . . to know whether he is sensible of any bias or prejudice . . . ."

Absent a timely request, the court, acting within its sound discretion, did not err in excusng those jurors who were depositors. *Yarborough v. Columbia Ry., Gas & Electric Co.,* 100 S. C. 33, 84 S. E. 308 (1915).

Although it cannot be said that membership in a large class of persons such as depositors of a bank is a legal disqualification, the trial judge may in the exercise of discretion excuse a juror for cause if, in the judgment of the court, the circumstances present a reasonable ground for apprehension of unfairness. *Tucker v. Buffalo Cotton Mills,* 76 S. C. 539, 57 S. E. 626 (1907).

The second question raised by the Bank is whether the trial court erred in directing a verdict for actual damages in

favor of the plaintiff, based on conversion. The Bank has never denied that it owed the palintiff the amount in her Christmas Club account. It contends that the account is merely a debt and that the money in the account is not a proper subject of conversion; it further contends that even if it were a proper subject of conversion, such has not been proved.

Benton denies discussing this matter with the plaintiff in December. Plaintiff testified that she did discuss the matter with Benton in December, over the telephone, and that he threatened to take her to court. She testified that she told him to hold the money if he was going to take her to court. The Bank would now rely upon her testimony under cross-examination to create a jury issue on the question of whether she consented for them to keep her money. From the whole of her testimony, we think the most that can be said is that she consented for the Bank to hold the money to avoid a law suit. At best, the consent was coerced, and we think that the only reasonable inference to be drawn from the whole of the testimony is that she did not voluntarily consent for the Bank to keep the check and the money it represented. Certainly, she never consented for the Bank to use her check and/or money to pressure her husband to pay his own personal debt.

Conversion has been defined in our case law as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights. *Ray v. Pilgrim Health & Life Ins. Co.*, 206 S. C. 344, 34 S. E. (2d) 218, 34 S. E. (2d) 218 (1945). Conversion may arise by some illegal use or misuse, or by illegal detention of another's chattel. *Castell v. Stephenson Finance Co.*, 244 S. C. 45, 135 S. E. (2d) 311 (1964).

Money may be the subject of conversion, when it is capable of being identified, and there may be conversion of determinate sums even though the specific

coin and bills are not identified. 89 C. J. S. Trover and Conversion § 23, p. 541 (1955). However, there can be no conversion where there is a mere obligation to pay a debt. *id.* Thus, where there is merely the relationship of debtor and creditor, an action based on conversion of the funds representing the debt is improper. 18 Am. Jur. (2d) Conversion § 10 p. 164 (1965).

The Bank argues that the plaintiff's Club account was in the nature of a general deposit and not subject to conversion because the relationship between them was only creditor and debtor.

This argument is, of course, based on the accepted principle that the relationship between a general depositor and his bank is that of creditor and debtor, and money deposited, unless put into a special account or specifically designated to be kept separate, becomes the property of the bank and goes into its general account. *Singletary & Son, Inc. v. Lake City State Bank*, 243 S. C. 180, 133 S. E. (2d) 118 (1963). Following this principle, the overwhelming authority is that money on deposit in a bank cannot be the subject of conversion unless it was intended to be kept separate or constituted a specific intact fund. Annot. 44 A. L. R. (2d) 927 § 7(c) p. 943 (1955). The proper action where payment of a general deposit is refused, is an action on the contract and not one in tort. 9 C.J.S. Banks and Banking § 320, p. 646 (1938).

If the facts in this case established nothing more than that the Bank had refused to pay plaintiff funds which she had on general deposit, then we would be disposed to say that the above authority precluded an action based on conversion.

However, the facts before us establish conduct on the part of the Bank, through its agent Benton, much more onerous than a simple breach of contract. Benton's actions, in withholding delivery of plaintiff's check and using this check to pressure her husband, constituted a wrongful and illegal

misuse of plaintiff's funds and amounted to a misappropriation of the same to the Bank's own use and benefit.

It cannot be contended that the Bank had a legal right to apply plaintiff's funds or use them in any manner to satisfy or attempt to satisfy her husband's obligation, for there was no mutuality of demands between them. 10 Am. Jur. (2d) Banks § 667, p. 637 (1963).

There is no doubt that plaintiff had an immediate right to possession of the funds within a reasonable time after the Christmas Club account was closed and the check issued payable to her. We quote from 18 Am. Jur. (2d) *supra,* § 54, p. 191:

"An action for conversion may be maintained by persons having the immediate right to possession of the artcile converted. Indeed, ordinarily, an immediate right to possession at the time of conversion is all that is required in the way of title or possession to enable the plaintiff to maintain his action."

The Bank's claim that plaintiff's funds could not be converted because they were commingled and confused with all other funds on deposit is without merit. The Bank itself specifically identified and designated the sums belonging to plaintiff by issuing its check No. 29916, drawn and made payable to plaintiff in the amount of $879.00. The Bank's refusal to deliver the check, which represented plaintiff's funds, upon demand, and its use of the check for its own wrongful and illegal purpose to the plaintiff's detriment, constituted the tort complained of.

We conclude, therefore, that the Bank is liable for the misappropriation and conversion of plaintiff's funds by its agent Benton, and there was no error by the trial court in directing a verdict for plaintiff based on the evidence.

The third issue raised by the Bank asks us to determine whether the trial court erred in not applying § 10.4-103(5), Code of Laws of South Carolina

(1962), to limit the Bank's liability to the amount on deposit.

Section 10.4-103(5), Uniform Commercial Code—Bank Deposits and Collections, provides:

"The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence."

We find that this section is not applicable to the present action which is based, not on the misapplication of an item in the bank collection process, but on the common law conversion of funds which belonged to plaintiff. Section 10.1-103 expressly provides that supplementary general principles of law are applicable where not specifically displaced by provisions of the Act.

We conclude, therefore, that the trial court properly applied principles applicable to damages for common law conversion and did not err in submitting the matter of punitive damages to the jury on the facts before him.

The Bank's final contention is that it was prejudicial error for the trial judge to charge Rule 4-0 of the State Board of Bank Control, Vol. 17 Rules and Regulations pp. 36-39, Code of Laws of South Carolina (1962), to the jury. This rule designates the records to be kept by banks. It requires that carbon copies of Christmas Club account checks be retained for one year. The charge, if erroneous, was not prejudicial. We have held that a new trial will not be ordered where, from an examination of the record, the court has no doubt but that the verdict of any fair jury would be the same even if no error had been committed.

*Gamble v. Travelers Ins. Co.,* 251 S. C. 98, 160 S. E. (2d) 523 (1968).

Accordingly, the verdict of the lower court is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.