0972

Frank ALBERTINI, Respondent v. Monte R. VEAL, Sr., Appellant.

(357 S. E. (2d) 716)

Court of Appeals

*Brian L. Boger,* Columbia, and *Thomas Kemmerlin, Jr.,* Beaufort, *for appellant.*

*Douglas K. Kotti* and *Harvey L. Golden,* Columbia, *for respondent.*

Heard April 14, 1987.

Decided June 8, 1987.

*Per Curiam:*

Frank Albertini commenced this suit for criminal conversation against Monte R. Veal, Sr. A jury awarded Albertini $28,188.00 actual damages and $270,145.33 punitive damages. The trial judge denied Veal's motion to reduce the punitive

damage award.[1] Veal appeals. We reverse and remand.

Frank and Patricia Albertini were married in 1963 and have a son born in 1964 and a daughter born in 1966. The couple moved to Columbia in 1979 when Albertini accepted a position with Colonial Life and Accident Insurance Company. Mrs. Albertini began a career in real estate with a branch of Gordon-Gallup following the move to Columbia. She met Monte Veal in December of 1982 when he became branch manager of her real estate office. Veal testified thw two became "close" several months later after she began discussing her family's personal problems with him. The Albertinis and Veal and his wife began socializing together. Veal and Mrs. Albertini testified their relationship was closest between the summer of 1983 and the summer of 1984. In August 1983 Veal ws fired from his job at Gordon-Gallup because of rumors of a sexual affair between him and Mrs. Albertini.

Mrs. Albertini moved out of the marital residence on June 30 or July 1, 1984. Albertini testified he still had hopes of reconciliation at that point, although he was suspicious of his wife's relationship with Veal. He subsequently hired private investigators who reported two incidents when Veal was alone with Mrs. Albertini for several hours at her apartment, and that the two spent the night of July 6, 1984 alone at Veal's Lake Wateree home. At that time, Veal and his wife were also separated. Albertini obtained a divorce on the ground of adultery on June 5, 1985.

Albertini sued Veal for criminal conversation, alleging that prior to June 1984 he and his wife had a satisfying marital relationship, and that subsequent to their separation in June 1984 he hoped for a reconciliation, but that beginning in July 1984 Veal had an adulterous relationship with Mrs. Albertini to Albertini's damage. He prayed for $500,000.00 actual and punitive damages.

The trial was held before a jury. Albertini testified that he had been terminated from his job with Colonial Life in 1983. In September 1983 he accepted a job with Policy Management Systems. He testified that upon learning of his

---

[1] The trial judge and the parties on appeal have apparently treated this motion as equivalent to a motion for a new trial nisi.

wife's adultery he became totally dysfunctional in his job, and was ultimately fired in July of 1985. At the time of the trial he had begun his own auto rental franchise, and estimated he was losing approximately $1,500.00 per month. He also testified to emotional problems attendant to the divorce, and the costs of legal fees. Mrs. Albertini testified that the marriage had been cooling for some time prior to 1979, and that in 1978 or 1979 the couple had discussed divorce. Mrs. Albertini and Veal denied having a sexual relationship, although both admitted they were sexually attracted to each other and loved each other. Both Veal and his wife testified that he had had ten extramarital affairs during the course of their twenty-seven year marriage. Mrs. Veal also testified her husband had never admitted having an affair with Mrs. Albertini. The jury returned a verdict for Albertini of $28,188.00 actual damages and $270,145.33 punitive damages. Veal appeals the denial of his motion for a reduction of the punitive damages award.

The tort of criminal conversation is premised upon a plaintiff's loss of the consortium of his spouse. *Rivers v. Rivers*, 354 S. E. (2d) 784 (S. C. Ct. App. 1987). It is a violation of a spouse's right to the exclusive privilege of sexual intercourse. *Vacek v. Ames*, 221 Neb. 333, 377 N. W. (2d) 86 (1985). The cause of action is grounded on the common law conception of a husband's property right in the person of his wife. *Henson v. Thomas*, 231 N. C. 173, 56 S. E. (2d) 432, 12 A. L. R. (2d) 1171 (1949). To recover for the tort of criminal conversation, the plaintiff must prove an actual marriage between spouses and sexual intercourse between the defendant and the plaintiff's spouse. *Rivers v. Rivers, supra.*

The trial judge has the power to reduce an excessive verdict by granting a new trial nisi. *Watson v. Wilkinson Trucking Company*, 244 S. C. 217, 136 S. E. (2d) 286 (1964). The motion for a new trial nisi is based on the contention that the verdict was unduly liberal. *Elliott v. Black River Electric Cooperative*, 233 S. C. 233, 104 S. E. (2d) 357 (1958). The granting or refusal of such a motion is within the sound discretion of the trial judge. *Peay v. Ross et al.*, 357 S. E. (2d) 482 (S. C. Ct. App. 1987). This Court has no power to review the judge's ruling unless it is founded

upon a factual basis wholly without evidence to support it, or manifestly controlled by error of law. *De Shields v. Insurance Co. of North America,* 125 S. C. 457, 118 S. E. 817 (1923); *Jenkins v. Dixie Specialty Company, Inc.,* 284 S. C. 425, 326 S. E. (2d) 658 (1985); *Gray v. Davis,* 247 S. C. 536, 148 S. E. (2d) 682 (1966); *Peay v. Ross et al., supra.* We find the award of $270,145.33 punitive damages wholly unsupported by the evidence, and thus the trial judge abused his discretion in refusing the motion for a new trial nisi.

In determining whether or not a punitive damages award is excessive, primary consideration is given to the character of the tort committed, the punishment which should be meted out therefor, and the ability of the defendant to pay the damages awarded. *Patterson v. Bogan,* 261 S. C. 87, 198 S. E. (2d) 586 (1973).

## I.

We first consider the character of the tort committed. The action for criminal conversation, though long recognized in this state, is generally not looked upon with favor. *Fennell v. Littlejohn,* 240 S. C. 189, 125 S. E. (2d) 408 (1962). Proof of such disfavor is evidenced by the fact that we were able to locate only three cases decided by the South Carolina Supreme Court dealing with substantive aspects of the cause of action. Our research also shows that since the 1930s there has been a definite trend to abolish the cause of action. Over half the states and the District of Columbia have either abolished or at least severely limited the torts of criminal conversation and/or alienation of affection. Prosser and Keeton, *The Law of Torts* Section 124 at 930 (5th ed. 1984). Of particular note is the fact that our sister state of Georgia has abolished the cause of action by statute. *See,* Ga. Code Ann. Section 51-1-17 (1982). The principal reason for this trend, it seems, has been the increasing recognition by the courts of the autonomy of each spouse, laying to rest the outdated notion that one spouse constitutes the property of the other.[2] Prosser and Keeton, *The*

---

[2] While we do not in any way intend to disparage the institution of marriage or belittle Albertini's cause of action, we are compelled to observe the archaic basis for the tort of criminal conversation. We must also recognize, as did Mr. Justice Richardson in *Torre v. Summers,* 11 S. C. L. (2

*Law of Torts* Section 124 at 929-930. Of equal importance is the recognition of the vindictive motives of plaintiffs who bring these suits. *Id.*

In discussing the trend of the courts to emasculate the tort of criminal conversation, Professors Prosser and Keeton point out that a distinction should be made where the criminal conversation was "accomplished by means of some independent tort, such as fraud or defamation, or where the defendant has taken advantage of a person incapable of full consent, such as a child or an incompetent." Prosser and Keeton, *The Law of Torts* Section 124 at 930. There is no evidence of such an independent tort involved here.

## II.

We must next examine the punishment which should be meted out for the commission of this tort. Albertini testified that as a result of Veal's actions he was humiliated, disgraced, shamed, suffered mental anguish, lost the companionship of his wife, became dysfunctional at work, lost his job, suffered physical illness and sustained pecuniary loss, all of which are compensable by the award of actual damages. *Scott v. Kiker*, 59 N. C. App. 458, 297 S. E. (2d) 142 (1982); *see Fennell v. Littlejohn, supra.* Presumably, Albertini has been compensated for these injuries by the $28,188.00 actual damages award, which Veal does not appeal. Compensation for these injuries, therefore, is not the issue in this appeal; rather, the sole issue is to what extent should Veal be punished for his conduct.

Punitive damages are allowed to punish the wrongdoer and to discourage repetition of the tort by him and others. *Charles v. Texas Company*, 199 S. C. 156, 18 S. E. (2d) 719 (1942). They are recoverable in an action for criminal conversation where the defendant's conduct is

---

Nott & McC.) 267 (1820), that during the time the tort had its greatest efficacy a man whose wife was seduced by another was burdened with her for the rest of his life. As Justice Richardson succinctly noted:

> Strictly speaking, too, by the seduction of a wife, the positive loss to her husband is very great. Under the rules of law, he cannot, while the first is alive, take a second wife; his loss is therefore greater than if she were destroyed altogether.

characterized by circumstances of aggravation, such as the willful, wanton or malicious invasion of the plaintiff's rights. *Fennell v. Littlejohn, supra;* 41 Am. Jur. (2d) *Husband and Wife* Section 485 (1968).

Albertini asserts the following facts demonstrate that Veal's conduct was willful, wanton, malicious and aggravated: (1) he and Veal were best friends; (2) Veal utilized his supervisory position over Mrs. Albertini and the fact Mrs. Albertini confided in him her family problems to seduce a woman in a weakened emotional state; and (3) at the time of trial, although there was no evidence that Veal and Mrs. Albertini continued their relationship, Veal nonetheless had shown no repentance for his past "sins of adultery" because he was then engaged in an adulterous affair with another woman. On the other hand, the evidence shows: (1) the affair between Veal and Mrs. Albertini was not open and notorious, and was proved in the divorce proceeding solely by circumstantial evidence based on two brief periods the couple were alone in the early evening and the overnight lake trip; (2) neither Veal nor Mrs. Albertini admitted adultery in spite of the fact that Veal freely admitted ten other adulterous relationships; (3) Veal and Mrs. Albertini both testified they loved each other; and (4) the alleged adultery occurred after the Albertinis separated. Under no view of the evidence is a severe penalty justified in this case.

### III.

The third factor necessary to determine the excessiveness of a punitive damages award is the ability of the defendant to pay the damages awarded. Under South Carolina law a defendant's financial circumstances should properly be considered by the jury in making a punitive damages award. *Elders v. Parker,* 286 S. C. 228, 332 S. E. (2d) 563 (Ct. App. 1985). Veal argues that he is being punished too much by the jury verdict because the punitive damages award exceeds his assets. At trial neither party made much of an effort to present proof of Veal's assets. The evidence shows that Veal has a one-third interest in a joint venture with an approximate net asset value of $375,000.00, and owns a marital residence and a small lake house with

his estranged wife, neither of which were valued in the record. He also testified that he conveyed to his wife prior to the commencement of this action his interest in a cookie concession valued at approximately $150,000.00.[3] The evidence simply does not support Veal's ability to pay a $270,145.33 punitive damages verdict.

We conclude that the award of $270,145.33 punitive damages is wholly unsupported by the evidence presented at trial and, therefore, the trial judge abused his discretion in refusing the motion for a new trial nisi. We, therefore, reverse and remand the punitive damages award for proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[3] Albertini argued on appeal the cookie factory should be considered an asset of Veal because he believed he would be able to set aside the conveyance as voluntary under the Statute of Elizabeth. This assertion is speculative.