1204

Emmaline AUSTIN, Respondent v. The INDEPENDENT LIFE AND
ACCIDENT INSURANCE COMPANY and Murray Harter, Appellants.

(370 S. E. (2d) 918)

Court of Appeals

*George E. Lewis,* and *Elbert S. Dorn,* both of *Turner, Padget, Graham & Laney,* Columbia, *for appellants.*

*Gary W. Popwell, Jr.,* of *Lee, Eadon & Isgett,* Columbia, *for respondent.*

Heard May 23, 1988.

Decided Aug. 1, 1988.

CURETON, Judge:

This case involves a suit for fraud and conversion by an insured against her insurer. The insured, Emmaline Austin, obtained two insurance policies from the insurer, Independent Life and Accident Insurance Company. She alleges the agent for the company, Murray Harter, misrepresented the nature of one of the policies and also misrepresented her age on both policy applications. The jury returned a verdict in Austin's favor on both causes of action. On the cause of action for fraud, the jury awarded One Dollar ($1.00) in actual damages and One Hundred Thousand Dollars ($100,000) punitive damages. On the conversion claim, the jury awarded One Thousand One Hundred and Ninety-Two Dollars ($1,192) actual damages and One Hundred Thousand Dollars ($100,000) punitive damages. The trial judge granted a motion for a new trial *nisi* on the fraud claim unless Austin agreed to remit Fifty Thousand Dollars ($50,000) on the punitive damages award. This sum was remitted by Austin. The insurance company appeals. We affirm the trial court on the fraud claim and reverse on the conversion claim.

I.

Independent appeals from the denial of its motions for directed verdict and judgment notwithstanding the verdict on the fraud and conversion claims. In deciding these motions the trial judge does not weigh the evidence or determine the credibility of witnesses. Rather, the trial judge considers the evidence and all its reasonable inferences in the light most favorable to the nonmoving party and should deny the motions if the evidence yields more than one reasonable inference. *Mali v. Odom*, 295 S. C. 77, 367 S. E. (2d) 166 (Ct. App. 1988). Our review is limited to determining if there is any evidence to support the verdict of the jury. *Woods v. Rabon*, 295 S. C. 343, 368 S. E. (2d) 471 (Ct. App. 1988).

Viewing the evidence in the light most favorable to Austin, the record indicates she is an elderly woman with no formal education and no business experience. It was admitted she is unable to read and write. Ms. Austin obtained an insurance policy from Independent Life during 1970. She paid the small premium for this policy directly to the insurance agent when he came by to collect on a regular basis. On one such occasion in 1981, the agent, Murray Harter, inquired if she would be interested in more life insurance. Mr. Harter filled out the application form for Ms. Austin and she signed it by making her mark. The application indicated her age at her last birthday was fifty-two (52). Ms. Austin testified Harter did not ask her age and if he had she would have shown him her "birth certificate" which was a Bureau of the Census Report indicating she was five years old when the census was taken in 1910. There is evidence in the record the application for the policy written in 1970 gave her age at the next birthday as fifty-three (53). There is also evidence in the record from which a jury could reasonably infer the premium booklets listed the insured's age although Harter could not remember if the booklet for the 1970 policy contained this information. The 1981 and 1983 premium booklets did have Ms. Austin's age noted. Ms. Austin paid weekly premiums of Two Dollars and Fifty-Two Cents ($2.52) on the 1981 policy from June 15, 1981 through July 28, 1986. The 1981 life insurance policy carried benefits of One Thousand Five Hundred Dollars ($1,500), but the policy stated that if

the insured's age was misstated the benefits would be those which could be purchased for the premium at the insured's correct age. Additionally, Mr. Harter testified that legally the policy could not have been written on Ms. Austin if she was over seventy years of age. The record shows she was seventy-six in 1981.

Ms. Austin obtained another policy from Harter and Independent Life in 1983. Again, viewing the evidence in the light most favorable to Austin, the record indicates the application was completed by Mr. Harter. At that time her age was indicated as fifty-three (53). The policy was an accident policy with coverage limits of Three Thousand Dollars ($3,000). The text of the policy indicates it will terminate at age sixty-five (65). Ms. Austin testified she was led to believe she was purchasing another life insurance policy and would not have purchased an accident policy. Her monthly premium was Six Dollars ($6.00) which she paid from October 1983, through April 1986. The policy states that if an incorrect age is given the company will be liable for no more than the return of premiums.

Sometime during 1986 Ms. Austin's daughter had occasion to examine her mother's insurance policies. At that time she discovered the problem with the statements of her mother's age. She testified she went to the office of Independent Life and told Floyd Bruton, the district sales manager, about the problem. He asked for proof of her mother's age and she testified she took the census report to him. He indicated he would get in touch with the home office. The record is confusing as to exactly what request was made about the policies. The daughter indicated at one point in the record she did not ask Mr. Bruton to cancel the policies. She testified she did not ask him to change the policies.

Mr. Bruton testified Ms. Austin's daughter asked to get her mother's money back and the company offered a refund of the premiums which was not accepted because counsel had been retained. Ms. Austin testified no one from the company ever told her they would refund her premiums. She did testify a man from the company came by her house shortly after she got out of the hospital in June 1986 and told her the company had dropped her life insurance and offered her One Dollar ($1.00) if she would sign a paper

which she refused to sign. No claim was made under the policies.

## II.

In its exceptions Independent asserts error by the trial court in denying its trial motions on the fraud claim because there was no evidence Ms. Austin had a right to rely upon the representations of the company and there was no evidence of damage to her. These are the only two elements of fraud challenged by Independent. Independent specifically does not contend there were no misrepresentations made by it. Independent also asserts Ms. Austin failed to prove fraud by evidence which is clear, cogent, and convincing.

South Carolina Rule of Civil Procedure 50(a) requires a party to state the specific grounds for a directed verdict motion. The record does not indicate Independent moved for directed verdict on the ground there was no evidence of damage to Ms. Austin. Since the issue was not raised at the trial level, this court will not determine an issue presented for the first time on appeal. *Potomac Leasing Co. v. Bone*, 294 S. C. 494, 366 S. E. (2d) 26 (Ct. App. 1988).

Concerning the element of reliance, the district sales manager of Independent testified an applicant for insurance would have a right to rely upon the statements of an agent if the agent is trying to sell insurance to the person and knows the individual cannot read or write. Independent argues Ms. Austin had the policies in her possession and had a duty to read them or have them read to her. A person cannot complain of fraud and misrepresentation in the contents of a document if the truth can be ascertained by reading it; however, this rule is subject to the exception that failure to read may be excused if the party is ignorant and unwary. *Burwell v. South Carolina National Bank*, 288 S. C. 34, 340 S. E. (2d) 786 (1986). To determine if a person may be classified as ignorant and unwary the factors of the individual's education, business experience, and intelligence are all considered. *Burwell*, 288 S. C. at 40, 340 S. E. (2d) at 790. Ms. Austin worked as a sharecropper. She had no formal education. Mr. Harter, the agent of Independent, knew she could not read, or write. Under these facts, there was evidence

from which a jury could find Ms. Austin had a right to rely upon the representation of Mr. Harter. *See Thomas v. American Workmen,* 197 S. C. 178, 182, 14 S. E. (2d) 886, 887 (1941) ("[A] wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary.")

Independent also asserts Ms. Austin failed to prove fraud by the standard of clear, cogent, and convincing evidence. There are no exceptions to the jury charge. We assume the trial judge correctly instructed the jury about the burden of proof and the jury followed the court's instructions. It is not the function of this court to weigh the evidence in a law case, but rather to determine if there is any evidence to support a jury verdict. *Townes Associates Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). We have considered the exceptions raised by Independent on the fraud claim and find there is evidence to support the jury verdict.

### III.

Independent assigns error to the failure of the trial court to grant its trial motions on the conversion cause of action. Independent asserts no conversion was demonstrated. We agree.

Conversion is defined as an unauthorized assumption and exercise of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights. *Steele v. Victory Savings Bank,* 295 S. C. 290, 368 S. E. (2d) 91 (Ct. App. 1988). Ms. Austin had possession of the two policies so the conversion claim is not based upon a failure of Independent to deliver the policies. Her contention is her money was converted. This money was the sum of her premium payments.

Money may be the subject of conversion when it is capable of being identified. A check representing the amount of a specific Christmas Club account was converted by a bank when the bank withheld delivery of the check in an effort to pressure the spouse of the Christmas Club owner to pay his separate financial obligations to the bank. *Owens v. Andrews Bank & Trust Company,* 265 S. C. 490, 220 S. E. (2d) 116 (1975).

The insurance premiums in this case do not constitute the type of "money" which is subject to conversion. The premiums are not an identifiable or separate item. There is no evidence in the record Ms. Austin's premiums were separately maintained by Independent and not commingled with other premiums. This case is distinguishable from *Owens* because the money in that case was a specific check. Further, a check representing an insurance refund was also the item converted in *Perry v. United Insurance Company of America*, 262 S. C. 351, 204 S. E. (2d) 573 (1974). Ms. Austin's reliance on that case to support her conversion claim is misplaced. Ms. Austin attempts to fit the facts of this case into an inappropriate legal theory. Fraud is not a necessary element of conversion and it is not the case that every alleged fraudulent action also constitutes a conversion. The causes of action for fraud and conversion have distinct elements. The facts must be separately analyzed under each theory. In this case, the facts do not support a conversion theory.

## IV.

Independent excepts to the failure of the trial court to grant its motion for new trial absolute on the ground the jury's award of punitive damages is so shockingly excessive as to indicate the award resulted from passion, partiality, caprice or prejudice and was in no way supported by the evidence. The jury awarded a total of One Hundred Thousand Dollars ($100,000) in punitive damages on the fraud count. The trial court, on motion for new trial *nisi*, ordered a remittitur of Fifty Thousand Dollars ($50,000) on the punitive damage award. This amount was remitted by Austin.

Independent does not argue the one dollar award for actual damages on the fraud claim is an improper verdict or measure of damages. There is no indication Independent moved to strike punitive damages from the case. Independent has not cited any trial conduct which may have prejudiced the jury. The net worth of Independent was stipulated to be Two Hundred Ninety-Five Million Two Hundred Twenty-Five Thousand Dollars ($295,225,000).

It is the duty of a trial court and an appellate court to set aside a verdict absolutely when the verdict is "so grossly excessive and the amount awarded so shockingly disproportionate to the injuries as to indicate the jury was moved or actuated by passion, caprice, prejudice, or other consideration not founded on the evidence." *Young v. Warr*, 252 S. C. 179, 187, 165 S. E. (2d) 797, 801 (1969). In determining whether a punitive damage award is excessive, primary consideration is given to: (1) the character of the tort committed; (2) the punishment which should be meted out; and (3) the ability of the defendant to pay the damages awarded. *Albertini v. Veal*, 292 S. C. 561, 357 S. E. (2d) 716 (Ct. App. 1987).

There is sufficient proof of the ability of Independent to pay the punitive damage award given the evidence of its net worth. Concerning the character of the tort, the jury determined fraud had been committed. The fraud was committed upon an elderly, illiterate woman with no business experience who had been a customer of Independent for years. There was evidence in the record from which the jury could find Independent attempted to obtain a release from Ms. Austin for the sum of One Dollar ($1.00). As to the punishment which should be meted out, Independent sent its agent into the home of this lady. He solicited business from her while in her home collecting premiums on other policies. It is reasonably inferable Independent's agents deal with other members of the public. While the amount of punitive damages award is large, we cannot say it is so shockingly disproportionate as to indicate passion, caprice, prejudice, or other improper considerations.

The judgment of trial court is

Affirmed in part and reversed in part.

GARDNER, J., concurs.

GOOLSBY, J., concurs with separate opinion.

GOOLSBY, Judge (concurring):

I concur in the result reached by the majority in Parts II and III of their opinion and concur fully in Part IV thereof.

As to Part II, I agree that the appellants The Independent Life and Accident Insurance Company and Murray Harter failed, as required by Rule 50(a) of the South Carolina Rules of Civil Procedure, to include as a specific ground for their directed verdict motion the ground that Austin suffered no damage as a result of the appellant's alleged fraud; therefore, they did not properly preserve this issue for appellate review, even considering the complaint's allegations and the arguments made by trial counsel in support of their motion. *Cf. Connolly v. People's Life Insurance Company of South Carolina*, 294 S. C. 355, 364 S. E. (2d) 475 (Ct. App. 1988) (specificity requirement of Rule 50(a) is not a technical one and the Court of Appeals may look to the pleadings and the arguments of trial counsel to discern the trial judge's understanding of the basis of the motion before him).

On the issue of reliance and Austin's right to rely on the representation made by Harter concerning the policies sold her, I agree with the majority that Austin, because of her illiteracy, advanced age, and other circumstances, could rely on those representations. *Thomas v. American Workmen*, 197 S. C. 178, 14 S. E. (2d) 886, 136 A.L.R. 1 (1941).

As to Part III, no facts I have seen disclose Independent and Harter "unauthorize[dly] assum[ed] and exercise[d] the right of ownership" over Austin's money. *Ray v. Pilgrim Health & Life Insurance Company*, 206 S. C. 344, 347, 34 S. E. (2d) 218, 219 (1945). In fact, Austin received the policies for which she gave the appellants money. *Cf. Christensen v. Pugh*, 84 Utah 440, 36 P. (2d) 100, 95 A.L.R. 608 (1934) (where property is obtained with the owner's consent, even though under a misrepresentation as to the purpose of the transfer, an action for conversion will not lie until some further act is done by the transferee in disregard of the owner's right in the property). It is doubtful whether Independent could lawfully have denied a claim made under either policy. *See Hall v. Allstate Insurance Co.*, 284 S. C. 62, 324 S. E. (2d) 341 (Ct. App. 1984) (holding that an insurer cannot retain a premium received and at the same time deny the insured the benefit of his bargain under the policy).